E-FILED
Wednesday, 15 May, 2013  11:25:43 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| KEVIN RICHARD CARMODY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 12-CV-2249** |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, ILESANMI | ) | |
| ADESIDA, SHARON REYNOLDS, JOSEPH | ) | |
| BOHN, DEBORAH S. STONE, ELYNE COLE, | ) | |
| MICHAEL HOGAN, and JONG-SHI PANG, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

This case is before the court for ruling on the Motion to Dismiss Plaintiff's Complaint (#7) filed by Defendants, Board of Trustees of the University of Illinois, Ilesanmi Adesida, Sharon Reynolds, Joseph Bohn, Deborah S. Stone, Elyne Cole, Michael Hogan and Jong-Shi Pang.  This court has carefully considered the Complaint (#1) filed by Plaintiff, Kevin Richard Carmody, the exhibits attached to the Complaint and the arguments of the parties.  Following this careful and thorough review, Defendants' Motion to Dismiss Plaintiff's Complaint (#7) is GRANTED.

## FACTS[1]

Plaintiff worked for the University of Illinois (University) in the Department of Industrial Enterprise Systems Engineering (IESE) as an academic professional with the job

---

[1] In setting out the facts, this court has accepted the factual allegations of Plaintiff's Complaint as true, granting Plaintiff the benefit of every reasonable inference that may be drawn from those allegations.  See Williamson v. Curran, ___ F. 3d ___, 2013 WL 1338038, at *1 (7th Cir. 2013.  This court has also included facts contained in the exhibits Plaintiff attached to his Complaint.  See Burke v. 401 N. Wabash Venture, LLC, ___ F.3d ___, 2013 WL 1442280, at *2 (7th Cir. 2013).

title of Manager of Systems Services.  Plaintiff worked under a 12 month contract and held the same position for 22 years.  He was employed by the University for nearly 25 years.  In 2009, Plaintiff filed a lawsuit in the circuit court of Champaign County against David Goldberg, a tenured professor in the College of Engineering.  Plaintiff alleged that, during the pendency of the Goldberg litigation, on or about June 8, 2010, he received unsolicited documents in his home Champaign News-Gazette box.  These documents had been sent previously via e-mail or attachments thereto to and/or from Professor Deborah Thurston, a University employee.  The Thurston e-mails were relevant to Plaintiff's litigation against Goldberg because they were inconsistent with affidavits Thurston provided during the Goldberg litigation.

Plaintiff delivered the e-mails to one of the attorneys representing him in the Goldberg litigation.  Plaintiff's attorneys filed what they thought was an appropriate Motion which included the Thurston e-mails.  Plaintiff's attorneys knew that the attorneys representing Goldberg, who had been retained for Goldberg by the University, would provide copies of the Motion and accompanying documents to University counsel and University counsel would advise Thurston and take such action as appropriate.

On June 25, 2010, Judge Leonhard, who was handling the Goldberg litigation, held a hearing and ordered that the Thurston e-mails be placed under seal pending litigation of further claims of privilege or relevance.  Judge Leonhard also entered a protective order which stated that there was to be "no secondary dissemination" of the contents of the e-mails. At some point, either prior to or contrary to Judge Leonhard's order, agents or employees of the University received a copy of the Thurston e-mails.

2

On July 19, 2010, Defendant Ilesanmi Adesida, Dean of the College of Engineering, sent Plaintiff a letter which stated that it was a meeting notice.  The letter stated that the College of Engineering had been alerted to serious concerns related to improper use of and/or access to electronic communications.  The letter stated that Plaintiff was being notified that he was the subject of an investigation into these concerns.  The letter stated that the misconduct allegations were based on the following:

> It is alleged that on June 23, 2010, your attorney filed a document called "Exhibit A".  The exhibit contained some emails from or to University employee Deborah Thurston from 2005 and 2007.  The materials included attorney-client privileged communications, job related communications and personal correspondence.  You are not listed as a recipient or author of any of the email messages.  It is alleged that you attempted to use the substance of the email messages for non-University related purposes and without permission.  Furthermore, there are open questions regarding how you came to be in possession of these documents, specifically whether you obtained them through improper access.

The letter stated "[i]f substantiated, such acts of misconduct are a violation of university policy, including but not limited to the University Code of Conduct and the Policy on Appropriate Use of Computers and Network Systems at the University of Illinois at Urbana-Champaign."  The letter also stated that these were "very serious allegations that may result

in disciplinary action, up to and including immediate dismissal." The letter stated that a meeting had been scheduled for June 21, 2010, and that "[a]t this meeting you will have an opportunity to respond to all charges, with an understanding that University officials will determine whether it is more likely than not your actions were a violation of University policy." The letter further stated that Plaintiff was being placed on administrative leave, with pay, pending the outcome of the investigation.

According to Plaintiff's Complaint, none of the policies cited in the letter "actually contained a prohibition to an employee receiving documents from an anonymous source that had relevancy to a pending State civil litigation from delivering those documents to the attorney involved in the civil litigation and that attorney then making appropriate filings and participating in appropriate discovery proceedings."

A meeting was held on June 28, 2010, which Plaintiff's attorney, Robert Kirchner, attended.[2]  Plaintiff alleged that Defendant Joseph Bohn, Labor and Employee Relations Specialist at the University, and Defendant Sharon Reynolds, Assistant Director of the University's Office of Academic Human Resources, "confirmed that they were in possession of a copy of the sealed Thurston e-mails and that they intended to question the Plaintiff about the contents and substance of the same." Kirchner advised Bohn and Reynolds, and the attorney representing the University, that he would not allow Plaintiff to violate Judge Leonhard's order. Kirchner sent a letter, dated August 3, 2010, to Rhonda Perry, Associate University Counsel, confirming that he advised her at the meeting that he would not allow

_____

[2]  According to the documents attached to Plaintiff's Complaint, the meeting was continued from June 21, 2010, at Plaintiff's request.

4

Plaintiff to violate the order "by discussing or disclosing the contents of the sealed materials." Kirchner stated that he also told her that "by insisting that he do so, University personnel would be acting in violation of the order as well." Kirchner acknowledged that Perry disagreed with this assessment.

On August 11, 2010, Perry sent a letter to Kirchner which stated that it was her understanding that Judge Leonhard "sealed the documents to prevent further dissemination of the documents by the parties and their attorneys because of the concerns with how the documents were obtained." She stated:

> The University, as the owner of both the documents and the servers and equipment from which they were most likely obtained, is now attempting to investigate and determine what happened. I do not believe it was the intent of the Judge to prevent the University from using its documents as necessary in order to determine if there has been a breach of University security and/or a breach of trust and responsibility of any University employees.

Perry stated that the University would proceed with the investigation. According to Plaintiff, his attorney took steps to have Judge Leonhard's order vacated or modified, but that did not happen until September 23, 2010.

On September 7, 2010, Bohn and Reynolds sent a letter to Charles Thompson, Assistant Dean and Director, OIS Engineering Administration, and Defendant Deborah Stone, Director of the Office of Academic Human Resources. This letter set out the findings

5

of the investigation.  The letter stated that, as Manager of Systems Services, Plaintiff provides information technology support to IESE employees "both remotely and through direct physical contact with employee computers."  The letter also stated that Plaintiff's attorney filed a document called "Group Exhibit A" in the civil lawsuit against Goldberg.  The letter stated that the e-mails in "Group Exhibit A" included attorney-client privileged communications, job related communications and personal correspondence and that "[a]ll of the emails in 'Group Exhibit A' were either between Deborah Thurston and David Goldberg or about David Goldberg."  The letter stated that Thurston did not provide copies of the e-mails to Plaintiff and did not authorize anyone, including Plaintiff, to make copies, meaning that a breach of security occurred.  The letter stated that, when Plaintiff "became aware of the documents constituting 'Group Exhibit A', he did not immediately report the breach of security to his supervisor."  The letter stated that as an information technology professional, Plaintiff had "a duty to report breaches of security."  The letter also stated that Plaintiff did not receive permission from his supervisor, Defendant Jong-Shi Pang, IESE Department Head, or Thurston for his attorney to use the substance of the e-mail messages in his personal litigation.  The letter stated that Plaintiff's unauthorized use of the documents "created an unsafe environment for employees and a disruption in the workplace."  The letter acknowledged that Plaintiff's attorney represented that Plaintiff had found the documents in his News-Gazette box at home.  The letter concluded:

> Mr. Carmody attempted to use the substance of the email messages in "Group Exhibit A" for non-University related purposes and without permission.  Furthermore, it is more

probable than not that Mr. Carmody obtained the documents in
"Group Exhibit A" through improper access.  In addition to
violating policy, Mr. Carmody's misconduct violates the trust
and confidence entrusted to him as a University Information
Technology (IT) professional, casting significant doubt on his
ability to perform his essential job duties.

In light of our conclusions, and given the seriousness of the
violations, we recommend Mr. Carmody's employment with the
University be terminated effective immediately.

On September 9, 2010, Kirchner sent a letter to Perry and asked for an opportunity to respond to the "false information included in the September 7th correspondence."  Kirchner also complained that a new charge of breach of security and duty owed by Plaintiff had been added for the first time.

On September 23, 2010, Plaintiff was served with a letter notifying him that his employment with the University had been terminated, effective that day.  The letter was signed by Thompson and Stone and stated that the University found that Plaintiff engaged in the alleged misconduct.  The letter stated:

In particular, we find that you attempted to use the substance of
the email messages in "Group Exhibit A" for non-University
related purposes and without permission.  It is more probable
than not that the documents contained in "Group Exhibit A"
were   obtained   from   Deborah   Thurston's   computer.

Furthermore, it is more probable than not that you obtained the documents in "Group Exhibit A" through improper access.  As an information technology professional, you did not immediately report the breach of security to your supervisor when you came into possession of the documents constituting "Group Exhibit A."

As you know, the protection and security of our information technology and data are of utmost concern for the University.  Given your position's responsibilities to ensure that security and because of your actions, we can no longer trust you to carry out the responsibilities of your position.  As such, you cannot perform the essential functions of your position.

On September 30, 2010, Plaintiff notified Defendant Elyne Cole, Associate Provost for Human Resources, that he intended to appeal the decision to terminate his employment. On October 7, 2010, Cole provided Kirchner with proposed post-termination appeal procedures.  On October 12, 2010, Kirchner sent a letter to Cole setting out a lengthy list of "procedural deficiencies" in the proposed procedures, including a complaint that there was no provision for a court reporter or consent to a recording of the proceedings.

On October 21, 2010, Michael LeRoy, Professor of Law and Labor and Industrial Relations at the University, was selected by Cole to serve as hearing officer for the appeal. On October 25, 2010, Perry sent a letter to Kirchner responding to the issues raised in his October 12, 2010 letter.  Perry stated it was not the practice of the University to tape record

internal proceedings and stated that the hearing officer would make a record of the proceedings. Perry asked Kirchner to "state the authority for the suggestion that a court reporter or a recording by the parties is required." Perry ended her letter by stating that "[n]othing in the procedures prevent you from presenting relevant testimony and evidence to the Hearing Officer for consideration as part of the record."

On the first day of actual hearings, the hearing officer denied Plaintiff's request to allow a court reporter to provide a transcript of the hearing at Plaintiff's expense and made no provisions for a record of testimony. The hearing officer also denied a motion to exclude the University's witnesses from the hearing process. In addition, the hearing officer denied Plaintiff's request for access to examine University computers.

According to the hearing officer's summary of proceedings, dated July 11, 2011, hearings were held on November 12, 2010, November 18, 2010, December 14, 2010 and December 16, 2010. The report detailed lengthy cross-examination of witnesses and many objections by Kirchner during the course of the proceedings. The report stated that the University rested its case on December 16, 2010 and, immediately after the proceedings adjourned that day, the hearing officer overheard Kirchner "belligerently threaten to sue Ms. Stone in her personal capacity, and other University employees associated with the hearing." The hearing officer recounted that he asked Kirchner if Kirchner also intended to sue the hearing officer. The hearing officer stated that "Mr. Kirchner replied that he could not say for sure but a personal lawsuit against the Hearing Officer was a possibility." The hearing officer stated that he "left the hearing room feeling intimidated by the substance and angry tone of Mr. Kirchner's implied threat to sue him." The report stated that, after this hearing,

Kirchner asked to postpone the next scheduled hearing date and, after many discussions regarding setting dates for further proceedings, May 18 and 19, 2011 were reserved for the continuation of the due process hearing.  Part of the problem with finding dates was the limited availability of Defendant Jong-Shi Pang, who Plaintiff had asked the University to make available to testify.

On April 17, 2011, Kirchner died.  The hearing officer's report stated that he contacted Plaintiff and Perry the next day to seek their input on a future course of action. Plaintiff requested the hearing officer's notes, citing the lack of a transcript and Kirchner's objection to the lack of a transcript.  Perry objected to the disclosure of the hearing officer's notes, pointing out that Plaintiff was present for the entire hearing process and had the opportunity to see and observe the witnesses and take his own notes.  On May 16, 2011, the hearing officer denied Plaintiff's request for his notes.  On May 17, 2011, the hearing officer granted Plaintiff's request for a 60-120 day extension of time for him to secure proper legal representation.  On June 22, 2011, the hearing officer sent the following e-mail to Plaintiff and Perry:

> 1. Mr. Carmody, would you please update me on whether you
> have legal representation or not, and what you foresee in this
> regard?  2.  I am informing you both that I have been asked to
> interview with another university.  This information is personal
> and confidential.  In considering whether to make this disclosure
> or not, I know that my time with the University of Illinois might
> be drawing to a close, perhaps within 6-7 months (though the

outcome is far from clear).  I am making this disclosure in
consideration of the time that has already passed, and the
possibility that more time will be needed to complete the hearing
process.

On June 26, 2011, Plaintiff replied to the hearing officer by e-mail.  Plaintiff raised
numerous objections regarding the hearing process and stated that neither he nor his
representative would attend the rest of the post-termination hearing.  Plaintiff said "please
feel free to continue and conclude the post-termination hearing with [P]erry."  Perry
submitted a written summation to the hearing officer on July 8, 2011, and Plaintiff submitted
his objections to the substance of Perry's summation on July 9, 2011.  In his July 11, 2011
report, the hearing officer made the following findings:

1. The University presented substantial circumstantial evidence
that Mr. Carmody breached a computer and/or computer system,
however, this evidence was not clearly convincing.  The
University presented no direct evidence to support this
allegation.  Viewing the totality of this evidence, the University
did not conclusively support this charge.

2 The University clearly and convincingly supported its charge
that Mr. Carmody (a) possessed e-mails in "Tab A," (b) used e-
mails in "Tab A" in connection with his private lawsuit, and (c)
failed to report a breach of a University computer system after
he possessed e-mails in "Tab A."

11

3. The University clearly and convincingly supported its reasoning that the "Policy on the Appropriate Use of Computers and Networks," and the "University Code of Conduct," apply to the conduct in the immediately preceding point.

The hearing officer stated that he recommended "that the University reconsider if it would take the same adverse action against Mr. Carmody in light of this report's conclusion that one of the charges had inconclusive support, but the remaining charges were clearly supported."

On August 30, 2011, Cole sent Plaintiff a letter and stated that she had reviewed the hearing officer's findings and recommendations and the record from the appeal hearing.  She stated that she had specifically reviewed the hearing officer's recommendation that the University reconsider if it would take the same adverse action against Plaintiff in light of the report's conclusion that one of the charges had inconclusive support.  Cole stated that, in response, she found "those charges the Hearing Officer found to be clearly supported sufficiently egregious to warrant immediate dismissal" so that Plaintiff's "dismissal stands."

PROCEDURAL HISTORY

On September 24, 2012, Plaintiff filed his Complaint (#1) in this court, with attached exhibits.  In Count I, Plaintiff alleged a violation of his right to due process of law against all Defendants.  Plaintiff alleged that he was deprived of a valuable property and liberty interest without due process.  Plaintiff alleged various inadequacies in the pre-termination and post-termination proceedings.

In Count II, Plaintiff brought a state law pendent claim against Defendants Adesida, Hogan, Pang and the Board of Trustees.  Plaintiff alleged that, on May 21, 2007, Plaintiff

12

reported to Thurston that University Professors Wildblood and Carnahan were using University resources for a private business activity. Carnahan is Thurston's husband. Plaintiff then brought the matter to the attention of the State of Illinois Office of Executive Inspector General. On July 1, 2010, Plaintiff was reassigned from reporting to IESE Department Head Pang and assigned to report to the College of Engineering Assistant Dean Charles Thompson. On September 23, 2010, Plaintiff was served with a letter notifying him that his employment with the University had been terminated. Plaintiff alleged that, on information and belief, he believes that Defendants' decision to transfer assigned reporting and the initial investigation of charges which led to his termination "was motivated in part" in retaliation for Plaintiff's reporting of private business activity, in violation of Illinois law. Plaintiff cited to provisions of the State Officials and Employees Ethics Act (Ethics Act) which prohibit any retaliatory action against a State employee because the State employee discloses a violation of law, rule or regulation. See 5 Ill. Comp. Stat. 430/15-10.

On November 1, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint (#7) and a Memorandum of Law in Support (#8). Defendants argued that Plaintiff's Complaint should be dismissed because: (1) Defendant Board of Trustees is immune from suit; (2) Count I fails to designate the legal capacity of Defendants Adesida, Reynolds, Bohn, Stone, Cole, Hogan and Pang; (3) the allegations of the Complaint are insufficient as to Defendants Adesida, Stone and Hogan; (4) claims for injunctive relief and damages are improperly pleaded; (5) Count I is insufficient to state a claim for a due process violation; and (6) Count II fails to state a cause of action.

On December 10, 2012, Plaintiff filed a Response to Motion to Dismiss (#10).

Plaintiff argued that his allegations are sufficient under the applicable standard to avoid dismissal.

MOTION TO DISMISS

STANDARD

To avoid dismissal, Plaintiff's claim must contain allegations that "state a claim to relief that is plausible on its face." Alam v. Miller Brewing Co., 709 F.3d 662, 665 (7th Cir. 2013), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing the sufficiency of a complaint under the plausibility standard, this court must accept the well-pleaded facts in the complaint as true. Alam, 709 F.3d at 665-66. However, this court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Alam, 709 F.3d at 666, quoting Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Alam, 709 F.3d at 666, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 10(c) of the Federal Rules of Civil Procedure "provides that 'written instruments' attached to a pleading become part of that pleading for all purposes." Williamson v. Curran, ___ F.3d ___, 2013 WL 1338038, at *1 (7th Cir. 2013), citing Fed R. Civ. P. 10(c). "Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and [the] complaint references and relies upon that document in asserting [his] claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." Williamson, 2013 WL 1338038, at *1. Therefore, this court may properly

14

consider the exhibits attached to the Complaint in ruling on the motion to dismiss.  See Williamson, 2013 WL 1338038, at *1.  Further, this court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material."  Burke v. 401 N. Wabash Venture, LLC, ___ F.3d ___, 2013 WL 1442280, at *2 (7th Cir. 2013), quoting Rosenblum v. Travelbyus.com Ltd., 229 F.3d 657, 661 (7th Cir. 2002).  To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit typically controls.  Forrest v. Universal Sav. Bank, F.A., 507 F.3d 540, 542 (7th Cir. 2007).  A "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."  Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005); Bambenek v. Wright, 2007 WL 2914215, at *4 (C.D. Ill. 2007).

ANALYSIS

I.  COUNT I - DUE PROCESS CLAIM[3]

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law."  Mann v. Vogel, 707 F.3d 872, 878 (7th Cir. 2013).  Plaintiff alleged in his Complaint that his employment was terminated in violation of his due process rights.  Defendants have not contested whether Plaintiff has sufficiently alleged a deprivation of a protected property or liberty interest. Therefore, the issue is whether the deprivation occurred without due process.  See Mann, 707

_____

[3]  Because this court's ruling on this issue is dispositive of Plaintiff's claims, it is not necessary for this court to address the additional reasons for dismissal argued by Defendants in their Motion to Dismiss.  See Bambenek v. Wright, 2007 WL 2914215, at *10 (C.D. Ill. 2007).

F.3d at 879.

Plaintiff has alleged that both the pre-termination and post-termination procedures were inadequate.  With respect to the pre-termination process, both the United States Supreme Court and the Seventh Circuit have held that "due process 'requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'"  Bodenstab v. County of Cook, 569 F.3d 651, 663 (7th Cir. 2009), quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  A pre-termination hearing need not be elaborate, and the formality and procedural requirements for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings.  Loudermill, 470 U.S. at 545; see also Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 536 (7th Cir. 2008).  Where "adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Michalowicz, 528 F.3d at 536-37, quoting Loudermill, 470 U.S. at 545-46.  In most cases, "a public employee with a protectable property interest in his or her job who faces for-cause termination 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" Lalvani v. Cook County, 396 F.3d 911, 915 (7th Cir. 2005), quoting Loudermill, 470 U.S. at 546.

This court agrees with Defendants that the allegations of Plaintiff's Complaint, as well as the documents attached to the Complaint, establish that the pre-termination proceedings were adequate.  Plaintiff's allegations and the documents attached to the Complaint show that

Plaintiff received written notice of the charges against him related to the "Exhibit A" documents and that a disciplinary meeting was held on June 28, 2010, prior to the termination decision.  Plaintiff had been notified that "[a]t this meeting you will have an opportunity to respond to all charges, with an understanding that University officials will determine whether it is more likely than not your actions were a violation of University policy."  Plaintiff's only allegation regarding this meeting was that his attorney notified Defendants that Plaintiff would not be allowed to violate Judge Leonhard's Order. Kirchner's letter stated that he would not allow Plaintiff to violate the order "by discussing or disclosing the contents of the sealed materials."  This court agrees with Defendants that Plaintiff's voluntary decision not to participate at the meeting, based on Kirchner's belief that participating would violate a court order entered in a state court case (a belief disputed by the University), does not show that the pre-termination proceedings were inadequate.

In his Response to the Motion to Dismiss, Plaintiff did not argue that the pre-termination hearing was inadequate for that reason, but instead argued that "there were no pre-termination proceedings relating to the charge that he failed to properly respond to a breach of security."  However, the allegations and documentation show that Plaintiff was notified that he was being investigated regarding his possession and use of the documents contained in "Exhibit A" and his termination was based upon his possession and use of these documents.  The statement of the charges was "certainly sufficient to allow [Plaintiff] to defend himself."  See Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794, 804 (7th Cir. 2000).  In light of the fact that Plaintiff's allegations and the documents attached to the Complaint show that a full post-termination hearing was available to Plaintiff, this court

concludes that the alleged pre-termination hearing deficiencies are not valid grounds for a due process claim. See Michalowicz, 528 F.3d at 537; see also Greene v. City of Neillsville, 2009 WL 2341807, at *4 (W.D. Wis. 2009). This court therefore concludes that Plaintiff has not stated a pre-termination claim upon which relief could be granted. See Michalowicz, 528 F.3d at 537-38.

As far as the post-termination proceedings, the due process clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged." Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine whether the post-termination proceedings were adequate to provide Plaintiff with due process, this court must balance three factors: "[f]irst, the private interest that [was] affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mann, 707 F.3d at 879, quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In this case, this court must balance Plaintiff's right to his employment, with the procedures afforded him and the additional procedures he claims were necessary, in conjunction with the University's interest in the termination of an employee accused of violating University policy and an efficient, cost-effective proceeding.

Plaintiff's Complaint alleged that the post-termination proceedings were inadequate because: (1) there was no transcript of the hearing so Plaintiff was denied adequate

representation by counsel, or even by himself, after Kirchner's untimely death; (2) the hearing officer denied his motion to exclude University witnesses from the hearing process, thus allowing the potential for witnesses to compare and harmonize their testimony; (3) he was denied access to University computers for inspection prior to the hearing; (4) the University failed to make witnesses it had agreed to produce available for the hearing; (5) the hearing officer did not recuse himself after he thought he was intimidated and believed there was a possibility of a lawsuit against him; (6) Plaintiff was terminated based solely on charges brought for the first time post termination, charges which were not a proper basis for termination; and (7) the process was structured in such a way that there could be no meaningful impartial judicial review.

This court concludes that none of these allegations can survive a motion to dismiss. Plaintiff's allegations and the documents attached to the Complaint show that a lengthy hearing was held at which Plaintiff's counsel was allowed to engage in protracted cross-examination of the University's witnesses. This court concludes that the purported hearing deficiencies raised by Plaintiff are not constitutionally required in a termination proceeding for a public employee. See Fenje v. Feld, 301 F. Supp. 2d 781, 803 (N.D. Ill. 2005), aff'd, 398 F.3d 620 (7th Cir. 2005). Plaintiff has not cited any case law authority for his argument that a transcript or recording of the proceedings was necessary to provide due process, and this court has found none. This court concludes that the lack of a transcript did not prevent Plaintiff from obtaining new counsel to present evidence in his defense at the hearing or from presenting such evidence on his own. Instead, Plaintiff chose not to participate further in the hearing. In applying the appropriate balancing test, this court concludes that Plaintiff's

voluntary choice did not make the post-termination proceedings inadequate.

This court further concludes that Plaintiff cannot show that his due process rights were violated because the hearing officer did not exclude the University's witnesses from the hearing. Again, Plaintiff has provided no case law support for this allegation and this court has found none. In fact, there is no constitutional requirement that a post-termination hearing comport with rules of evidence. See Amundsen v. Chicago Park Dist., 218 F.3d 712, 717 (7th Cir. 2000); Fenje, 301 F. Supp. 2d at 803. In balancing the relevant factors, this court concludes that Plaintiff cannot show that this additional procedure was necessary for the post-termination hearing to comport with due process.

This court next concludes that Plaintiff was properly denied access to University computers. While discovery is sometimes allowed prior to post-termination proceedings, see Powers v. Richards, 2006 WL 1749611, at *5 (C.D. Ill. 2006), aff'd 549 F.3d 505 (7th Cir. 2008), this court concludes that it cannot be a violation of due process for an employer to refuse access to its computers to an employee accused of improperly obtaining e-mails containing privileged information. In addition, Plaintiff's own documents show that his allegation that the University failed to make witnesses available is meritless. The documentation provided by Plaintiff conclusively shows that the University rested its case on December 16, 2010. The hearing officer's report recounted the difficulty the parties were having in setting dates for the continuation of the proceedings, in part because of the limited availability of Pang, one of the witnesses Plaintiff wanted the University to make available. In fact, because Kirchner died and Plaintiff decided not to participate in further proceedings, no further hearings were held and Plaintiff never presented his case before the hearing

officer.  Therefore, the University never had the opportunity to make witnesses available for Plaintiff to call.  Based upon these facts, Plaintiff cannot state a plausible claim based upon the University's alleged failure to make witnesses available.

Plaintiff's allegation that the hearing officer should have recused himself after he was threatened with a lawsuit by Kirchner requires little consideration.  This court concludes, without hesitation, that Plaintiff cannot plausibly claim a denial of due process based upon his own attorney's conduct at the hearing.  This court additionally notes that the documentation Plaintiff has provided shows that the hearing officer continued to work with Kirchner in attempting to set dates for the continuation of the hearing and, after Kirchner's death, allowed Plaintiff a lengthy continuance in order to seek new representation.  This court concludes that Plaintiff's allegations cannot overcome the presumption that the hearing officer was a man of honesty and integrity, capable of judging fairly.  See Amundsen, 218 F.3d at 716.

This court also concludes that the hearing officer properly considered whether Plaintiff's termination was warranted based upon his possession of the e-mails in "Exhibit A" and could properly conclude that the evidence showed that Plaintiff failed to report a breach of a University computer system after he came into possession of the e-mails.  This court concludes that, because the charges against Plaintiff always included a charge of improper possession and use of the e-mails, the charge of failure to report a breach of security based upon possession of the e-mails did not add a new or unrelated charge.  Finally, this court has already found that the lack of a transcript did not violate Plaintiff's due process rights so Plaintiff's allegation that the process was structured in such a way that there could

21

be no meaningful impartial judicial review, based upon the lack of a transcript, does not survive a motion to dismiss.

This court agrees with Defendants that Plaintiff's own allegations and exhibits establish that he was given the opportunity to present his case and have its merits fairly judged. See Logan, 455 U.S. at 433. Based upon the documents attached to the Complaint, it is clear that Plaintiff had pre-termination and post-termination proceedings which complied with the requirements of due process. Accordingly, Plaintiff did not adequately plead a violation of due process rights and Count I of his Complaint must be dismissed. See Mann, 707 F.3d at 875.

## II.  COUNT II - ETHICS ACT CLAIM

Defendants argued that Count II should be dismissed against all Defendants as the allegations in the Complaint establish that the required elements of an action under the Ethics Act cannot be met. Section 15-20 of the Ethics Act provides:

A violation of this Article may be established only upon a finding that (i) the State employee engaged in conduct described in Section 15-10 and (ii) that conduct was a contributing factor in the retaliatory action alleged by the State employee. It is not a violation, however, if it is demonstrated by clear and convincing evidence that the officer, member, other State employee, or State agency would have taken the same unfavorable personnel action in the absence of that conduct.

5 Ill. Comp. Stat. 430/15-20 (West 2012). Defendants pointed out that Plaintiff alleged that

he reported the private business activity on May 21, 2007.  Plaintiff was not terminated from his job until September 23, 2010.  Defendants asserted that the gap of over three years between the alleged protected conduct and the adverse job action is fatal to his claim.

In his Response, Plaintiff stated that Defendants were arguing that "animus created during the whistle-blowing in 2007 could not possibly be a motivating factor in getting even three years later."  Plaintiff argued that Defendants' argument "ignores the fact that the aftermath of the investigations following the 2007 whistle-blowing would last for a considerable time, thus providing a motivation for Defendants to be upset for some time after 2007."  Plaintiff argued that a trier of fact could conclude that someone who wishes to get even could "patiently wait[] for an opening."

This court concludes that Plaintiff has not stated a claim to relief under the Ethics Act "that is plausible on its face."  See Alam, 709 F.3d at 665.  Setting aside the fact that Plaintiff did not allege any reason why the named Defendants would harbor any animus against Plaintiff for his report (Plaintiff only alleged that one subject of his report, Carnahan, is married to Thurston, who is not a defendant), this court concludes that it is not plausible that Defendants waited three years for Plaintiff to violate University policy so they could "get" him for his report of private business activity.  A lengthy period of time between a plaintiff's protected expression and the adverse action "discounts the causal connection between the two events."  Samuelson v. Durkee/French/Airwick, 976 F.2d 1111, 1115 (7th Cir. 1992).  "As the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy."  Lalvani v. Cook County, Ill., 269 F.3d 785, 790 (7th Cir. 2001).  The more than three year time span is

23

"well beyond the time that would allow a reasonable jury to conclude that his termination was causally related" to his 2007 report of private business activity.  See Lalvani, 269 F.3d at 790-91 (noting that time periods of four months, five months and one year had been found to negate a causal inference); see also Hoppe v. Lewis Univ., 692 F.3d 833, 842 (7th Cir. 2012) (no causal connection where plaintiff engaged in protected activity two-and-one-half years prior to adverse employment action); Kidwell v. Eisenhauer, 679 F.3d 957, 966-67 (7th Cir. 2012) (adverse employment action must fall "close on the heels" of protected activity to give rise to an inference of causation); Haywood v. Lucent Techs., Inc., 323 F.3d 524, 532 (7th Cir. 2003) (one year period too long for a fact-finder to infer that termination causally related to protected conduct).  Further, Plaintiff's argument that Defendants may have been patiently waiting for more than three years for an opportunity to punish Plaintiff does not support an argument that Plaintiff has stated a plausible claim.  See Haywood, 323 F.3d at 532 ("pure speculation" that the defendant was lying in wait for the opportunity to punish the plaintiff "provides nothing to establish causation").

Plaintiff has relied on Benjamin v. Ill. Dep't of Fin. & Prof'l Regulation, 688 F. Supp. 2d 796 (N.D. Ill. 2010).  Benjamin is not helpful to Plaintiff, however.  In that case, the court found that the plaintiff had sufficiently pled that one of the defendants violated the Ethics Act by participating in retaliatory acts towards the plaintiff.  Benjamin, 688 F. Supp. 2d at 804.  However, in Benjamin, the plaintiff alleged that he started making complaints in 2006 and then made numerous complaints in 2008, including providing information to the Federal Bureau of Investigation throughout July 2008.  Benjamin, 688 F. Supp. 2d at 799-800.  The plaintiff alleged that, in retaliation for his conduct, his employment was terminated on

August 5, 2008.  <u>Benjamin</u>, 688 F. Supp. 2d at 800.  In <u>Benjamin</u>, therefore, the alleged retaliation occurred "close on the heels" of significant protected conduct by the plaintiff. Therefore, <u>Benjamin</u> does not provide any support for Plaintiff's argument that he has stated a plausible claim based upon allegations that he made a report in 2007 and the alleged retaliatory actions occurred more than three years later in 2010.

### III.  CONCLUSION

For the reasons stated, this court concludes that Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted.  This court notes that, at the end of his Response (#10), Plaintiff stated that he would request leave to file an Amended Complaint "if the Court feels that a cause of action could be stated based upon a more complete articulation of factual context."  The court concludes, however, that any amendment to Plaintiff's Complaint would be futile.  Plaintiff cannot change the documents which he attached to the Complaint, which show that the procedures in place were sufficient to provide Plaintiff an opportunity to be heard and prevent an erroneous deprivation of a protected property or liberty interest.  Plaintiff also cannot change the fact that his alleged protected conduct occurred more than three years before the alleged retaliatory conduct. Accordingly, Plaintiff's request for leave to file an Amended Complaint is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Dismiss (#7) is GRANTED.  Plaintiff's Complaint (#1) is dismissed.  Because any amendment to Plaintiff's Complaint would be futile, Plaintiff's request for leave to file an Amended Complaint is DENIED.

(2) This case is terminated.

ENTERED this 15th day of May, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE