**E-FILED**
Friday, 20 November, 2015  04:10:46 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| KEVIN RICHARD CARMODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2012-CV-2249 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| ILESANMI ADESIDA, SHARON | ) | |
| REYNOLDS, JOSEPH BOHN, | ) | |
| DEBORAH S. STONE, ELYNE COLE, | ) | |
| MICHAEL HOGAN, and JONG SHI-| ) | |
| PANG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTIONS IN LIMINE**

NOW COMES Plaintiff, KEVIN RICHARD CARMODY, by his attorneys, Flynn,

Palmer, Tague & Jacobson, and for his Memorandum in Support of his Motions in Limine, states

as follows:

**First Motion in Limine
Barring Testimony as to Actions Taken on Advice of Counsel**

The Defendants have vigorously asserted attorney-client privilege throughout the

litigation, pre-trial discovery and depositions.  An abundance of documents exist, but were not

provided to Plaintiff in pre-trial discovery as evidenced by the 140 pages of privileged logs

identifying those abundant documents.  (#46-20, #46-24).  Throughout depositions, attorney-

client privilege was asserted and a key internal memorandum was the subject of proceedings

before this Court concerning whether or not it was subject to attorney-client privilege (#64, #65, #69, #70, #73).

Had any Defendant placed evidence of a communication with an attorney in connection with a defense at issue, then the privilege would have been waived. American National Bank & Trust Company of Chicago v. Allmerica Financial Life Insurance and Annuity Company, 2005 WL 62499757 (N.D. Ill. 2005).

Courts recognize that advice of counsel evidence is admissible relating to a defendant's state of mind. However, to be admissible, a defendant must establish that: (1) before taking action, (2) he or she in good faith sought the advice of an attorney whom he or she considered competent, (3) for the purpose of securing advice on the lawfulness of his or her possible future conduct, (4) and made a full and accurate report to his or her attorney of all material facts which the Defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report. United States v. Jackson, 1995 WL 337067 (N.D. Illinois 1995).

For any Defendant to make the foundational requirements to use an advice of counsel defense, substantial underlying facts and circumstances would need to be admitted into evidence. All of that evidence has heretofore been concealed from the Plaintiff through the invocation by the Defendants and their counsel of an attorney-client privilege. The Plaintiff would have no reasonable opportunity to challenge any foundational testimony or cross examine the Defendants or their witnesses if for the first time at trial they were allowed to testify that actions taken in the termination process for Kevin Carmody were based upon advice of counsel

2

To date the Defendants have not taken the affirmative step in the litigation to place advice of attorney in issue, albeit all of the Defendants are claiming a defense of qualified immunity for their actions relating to Kevin Carmody.

It would be manifestly unfair to the Plaintiff to allow the Defendants to maintain strict adherence to attorney-client privilege throughout pre-trial proceedings and then to allow testimony as to advice, information or other materials provided by counsel.

In the event that any Defendant wishes to interject evidence of advice of counsel, there should be prompt notice by the Defendants of their intention to do so and the Court would need to vacate the trial allotment and re-open discovery based upon a waiver of the attorney-client privilege or the Court should bar any such testimony.

## Second Motion in Limine
### Testimony Contrary to Previous Deposition
### Assertions of Failure to Recollect

Throughout the depositions of the University employees involved in the termination process, the witnesses repeatedly testified that they did not remember or did not recollect key events. (See Exhibits to #46). Specifically, the remaining Defendants testified on numerous occasions that they could not remember sources of information, details of information or from whom or to whom information was communicated. (#46-8, #46-12, #46-18). It would be manifestly unfair to the Plaintiff to now allow Defendants' counsel to elicit testimony from any of the witnesses who were deposed that they now remember answers to questions to which they previously answered lack of memory in pre-trial depositions.

The Federal Courts in the Seventh Circuit have broad discretion to rule on motions in limine pursuant to inherent authority to manage trials. In that regard, the Courts should enter

3

appropriate Orders to prohibit undisclosed testimony or witnesses.  <u>Anglin v. Sears, Roebuck & Co.</u>, 139 Fed.Sup.2d 914 (N.D. Ill. 2001).  To allow a witness of the University of Illinois who has previously testified to a lack of knowledge as to relevant information to at trial change testimony to actually state affirmative facts would substantively be the introduction of undisclosed testimony and would be manifestly unfair to the Plaintiff.  Accordingly, the Court should enter its Order prohibiting the Defendants' attorneys from eliciting testimony from any of its witnesses of affirmative statements of recollected facts as to information and questions to which the witness testified in deposition to a lack of memory or recollection.

KEVIN RICHARD CARMODY, Plaintiff,

BY:   FLYNN, PALMER, TAGUE, LYKE & JACOBSON,

By:   <u>s/ Michael J. Tague</u>
       Michael J. Tague

Michael J. Tague
FLYNN, PALMER, TAGUE & JACOBSON
402 West Church Street
Champaign, IL  61820
Telephone:   217-352-5181
Fax:        217-352-7964
Email:      fpt5law@aol.com

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he did on the 20th day of November, 2015, at or about the hour of 5:00 p.m., email to and deposit in the U. S. mail at the U. S. Post Office in Champaign, Illinois, an envelope addressed to:

William J. Brinkmann
Thomas, Mamer & Haughey, LLP
P. O. Box 560
Champaign, IL  61824-0560

bearing postage fully prepaying the same and also bearing the return address of Flynn, Palmer, Tague & Jacobson, 402 West Church, P. O. Box 1517, Champaign, IL 61824-1517, which such envelope contained a copy of the foregoing Memorandum in Support of Plaintiff's Motions in Limine.

s/ Michael J. Tague

Michael J. Tague
FLYNN, PALMER, TAGUE & JACOBSON
402 West Church Street
P. O. Box 1517
Champaign, IL  61824-1517
Telephone:     217-352-5181
Fax:           217-352-7964
email:         fpt5law@aol.com

**Anglin v. Sears, Roebuck and Co.**
United States District Court, N.D. Illinois, Eastern Division.   April 12, 2001   139 F.Supp.2d 914   26 Employee Benefits Cas. 1091   (Approx. 15 pages)

Order Modified by Anglin v. Sears, Roebuck and Co., N.D.Ill., June 7, 2001

Original Image of 139 F.Supp.2d 914 (PDF)

139 F.Supp.2d 914
United States District Court,
N.D. Illinois,
Eastern Division.

Steven K. ANGLIN, Plaintiff,

v.

SEARS, ROEBUCK AND CO., and Margaret Edidin, Defendants.

No. 93 C 3438.   April 12, 2001.

Former employee sued employer and supervisor, alleging that he was terminated so employer would not have to pay him benefits pursuant to "reduction in force" (RIF) plan, in violation of the Employee Retirement Income Security Act (ERISA). Both parties filed **motions in limine**. The District Court, Keys, United States Magistrate Judge, held that: (1) employee was precluded from offering expert witness' **testimony** at trial; (2) employee could present his own lay opinion **testimony** regarding whether employer violated its policies; (3) employee's performance review from subsequent employer was admissible; and (4) evidence offered to controvert a finding that employee was a participant in employer's RIF plan was not excluded as law of the case.

Motions granted in part and denied in part.

## West Headnotes (14)

Change View

| 1 | **Federal Civil Procedure** In general, federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials. 3 Cases that cite this headnote | 170A 170AVI 170AVI(D) 170Ak614 | Federal Civil Procedure Motions and Orders **Motions in Limine** in general (Formerly 170Ak927.5, 170Ak2011) |
|---|---|---|---|
| 2 | **Federal Civil Procedure** A federal district court is limited to excluding, in limine, only such evidence that is clearly inadmissible on all possible grounds. 6 Cases that cite this headnote | 170A 170AVI 170AVI(D) 170Ak614 | Federal Civil Procedure Motions and Orders **Motions in Limine** In general (Formerly 170Ak927.5, 170Ak2011) |
| 3 | **Federal Civil Procedure** When admissibility determinations are not clear on a **motion in limine**, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice can be resolved in their proper context. 10 Cases that cite this | 170A 170AVI 170AVI(D) 170Ak614 | Federal Civil Procedure Motions and Orders **Motions in Limine** In general (Formerly 170Ak927.5, 170Ak2011) |

SELECTED TOPICS

Federal Civil Procedure
   Depositions and Discovery
      Sanction for Disobedience of Discovery Order
   In-Limine Motion

Labor and Employment
   Adverse Employment Action
      Good Faith Element of Employee Retaliatory Discharge Claim

**Secondary Sources**

§ 2289 Failure to Comply With C Compelling Discovery
8B Fed. Prac. & Proc. Civ. § 2289 (3...
...Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It makes specific reference to orders on **motions** under Rule 37(a) to compel discovery and to orders on **motions** un...

§ 22:21. Dismissal; Default judg Bad faith or willful misconduct
2 Discovery Proceedings in Federal ..... 22:21 (3d ed.)
...A sanction of dismissal or entry of default will be appropriate if the offending party engaged in bad faith or willful misconduct. See Authority, this section. A finding of bad faith or willful misconduct...

§ 22:22. Dismissal; Default judg Violation of discovery order
2 Discovery Proceedings in Federal ..... 22:22 (3d ed.)
...A finding of bad faith or willful conduct in discovery proceedings may be justified if the offending party failed to comply with or acted in flagrant disregard of the Federal Rules of Procedure relatin...

See More Secondary Sources

**Briefs**

**Appellants' Brief**

2002 WL 32169928
John JENSEN, et al., Plaintiffs/Appel....., .. THE CITY OF WILMINGTON, an Illinois Municipal Corporation, et al., Defendants/Appellees.
United States Court of Appeals, Seventh Circuit.
November 21, 2002
...Appellate Court No. 02-1154 Short Caption: John Jensen et al. v. City of Wilmington, et al. To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governme...

**Brief for the Respondent in Opr**

2005 WL 1636434
Globe Newspaper Co., Inc. v. Ayash. Supreme Court of the United States. July 07, 2005
...Respondent Lois J. Ayash, M.D. was the plaintiff below. Petitioners Globe Newspaper Company, Inc. and Richard A. Knox were defendants below, together with defendants Dana-Farber Cancer Institute and Da...

**Petition for Writ of Certiorari**

2011 WL 5059137
Worrell v. Houston Can Academy, In... Supreme Court of the United States. October 18, 2011
...The decision of the Fifth Circuit panel in Sarah Worrell v. Houston Cani Academy (Appendix 1a-18a) is not reported. The

headnote

**4    Federal Civil Procedure**
Employee alleging that his termination interfered with his ERISA rights was precluded from offering expert witness' **testimony** at trial, where employee failed to produce witness for deposition despite seven requests by defense and six week extension by court to complete expert discovery. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.



| | |
|---|---|
| 170A | Federal Civil Procedure |
| 170AX | Depositions and Discovery |
| 170AX(C) | Depositions of Parties and Others Pending Action |
| 170AX(C)6 | Failure to Appear or Testify; Sanctions |
| 170Ak1451 | In general |

**5    Federal Civil Procedure**
Employee alleging that his termination interfered with his ERISA rights was precluded from presenting four witnesses at trial that were not disclosed until parties' face-to-face pretrial conference, two months after close of discovery. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.

1 Case that cites this headnote

| | |
|---|---|
| 170A | Federal Civil Procedure |
| 170AX | Depositions and Discovery |
| 170AX(A) | In General |
| 170Ak1278 | Failure to respond; sanctions |

**6    Labor and Employment**
While employee alleging that his termination for misconduct interfered with his ERISA rights could present evidence regarding lost opportunity damages to extent he was arguing, under separate alternative theories, that he would have received benefits under reduction in force plan or that he would have been rehired if terminated under such plan, such evidence was not admissible if employee was pursuing both theories. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.

1 Case that cites this headnote

| | |
|---|---|
| 231H | Labor and Employment |
| 231HVIII | Adverse Employment Action |
| 231HVIII(B) | Actions |
| 231Hk864 | Monetary Relief; Damages |
| 231Hk871 | Evidence as to damages |
| | (Formerly 255k41(6) Master and Servant) |

**7    Evidence**
Employee alleging that his termination for misconduct interfered with his ERISA rights could present his own lay opinion **testimony**

| | |
|---|---|
| 157 | Evidence |
| 157XII | Opinion Evidence |
| 157XII(A) | Conclusions and Opinions of Witnesses in General |

---

Memorandum and Order of the district court (S.D. Tex. January 15, 2010) (Appendix...

See More Briefs

**Trial Court Documents**

**People of the State of Illinois v.**

2010 WL 3829721
People of the State of Illinois v. Wexl..
Circuit Court of Illinois, Cook County
August 19, 2010
...This matter comes to be heard On Plaintiff's **Motions** to Compel Discovery. This Order applies only to Defendants Norman P. Wexler, Wexler & Wexler, LLC, Friedman & Wexler, and Wexler & Wexler. On or abo...

**Aurora Loan Services, LLC v. A**

2011 WL 4427730
Aurora Loan Services, LLC v. Allen
Circuit Court of Illinois, Cook County
June 07, 2011
...CAL. 56 This matter comes before the Court on Plaintiff, Aurora Loan Services, LLC's (hereinafter "Aurora") **Motion** for Sanctions. Aurora seeks sanctions against Defendant, Ruth A. Allen (hereinafter "A...

**Corr v. Pepsi, Inc.**

2009 WL 2189671
Corr v. Pepsi, Inc.
Circuit Court of Illinois, Cook County
April 22, 2009
...This matter came before the court on a **motion** by, Plaintiff, Robert Corr, for Summary Judgment. The Court having considered all the written submissions and oral arguments hereby finds as follows: BACKG...

See More Trial Court Documents

regarding whether employer was violating its policies when it terminated him; employee had worked for employer for 15 years. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140; Fed.Rules Evid.Rule 701, 28 U.S.C.A.

| 157k474 | Special Knowledge as to Subject-Matter |
| 157k474(1) | In general |

**8** **Federal Civil Procedure**
**Testimony** of employer's expert witness was admissible in employee's action alleging that his termination for misconduct interfered with his ERISA rights, despite late disclosure of witness; lateness was due primarily to employee's counsel's own failure to meet deadlines. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.



| 170A | Federal Civil Procedure |
| 170AX | Depositions and Discovery |
| 170AX(A) | In General |
| 170Ak1278 | Failure to respond; sanctions |

**9** **Labor and Employment**
**Testimony** of two coworkers regarding employee's conduct or job performance, though not considered by persons who decided to terminate employee, was admissible in employee's action alleging that his termination interfered with his ERISA rights; **testimony** corroborated employer's alleged legitimate reasons for termination. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.



| 231H | Labor and Employment |
| 231HVIII | Adverse Employment Action |
| 231HVIII(B) | Actions |
| 231Hk859 | Evidence |
| 231Hk862 | Admissibility |
| | (Formerly 255k40(2) Master and Servant) |

**10** **Labor and Employment**
Evidence regarding employee's prior performance reviews were admissible in employee's action alleging that his termination for misconduct interfered with his ERISA rights; reviews corroborated employer's alleged reasons for termination. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.



| 231H | Labor and Employment |
| 231HVIII | Adverse Employment Action |
| 231HVIII(B) | Actions |
| 231Hk859 | Evidence |
| 231Hk862 | Admissibility |
| | (Formerly 255k40(2) Master and Servant) |

**11** **Labor and Employment**
Performance review of terminated employee

| 231H | Labor and Employment |
| 231HVIII | Adverse Employment Action |

Anglin v. Sears, Roebuck and Co. - WestlawNext
2:12-cv-02249-CSB-EIL   # 77   Page 9 of 26
Page 4 of 14

prepared by his subsequent employer was admissible in employee's action alleging that his termination for misconduct interfered with his ERISA rights, to refute employee's claim that he continued to have valuable technical skills and that he functioned professionally in corporate environments. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.

| | |
|---|---|
| 231HVIII(B) | Actions |
| 231Hk859 | Evidence |
| 231Hk862 | Admissibility |
| | (Formerly 255k40(2) Master and Servant) |

**12  Federal Civil Procedure**
Evidence contradicting employee's **testimony** regarding contents of employer's videotaped presentation to employees was admissible in employee's action alleging that his termination for misconduct interfered with his ERISA rights, though employer did not produce tape during discovery; employee presented no evidence of bad faith. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.

| | |
|---|---|
| 170A | Federal Civil Procedure |
| 170AX | Depositions and Discovery |
| 170AX(E) | Discovery and Production of Documents and Other Tangible Things |
| 170AX(E)5 | Compliance; Failure to Comply |
| 170Ak1636 | Failure to Comply; Sanctions |
| 170Ak1636.1 | In general |

**13  Labor and Employment**
Evidence regarding investigation of employee's conduct prior to meeting where decision to terminate him was made was admissible in employee's action alleging that his termination for misconduct interfered with his ERISA rights. Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C.A. § 1140.

| | |
|---|---|
| 231H | Labor and Employment |
| 231HVIII | Adverse Employment Action |
| 231HVIII(B) | Actions |
| 231Hk859 | Evidence |
| 231Hk862 | Admissibility |
| | (Formerly 255k40(2) Master and Servant) |

**14  Courts**
Evidence offered to controvert a finding that employee was a participant in employer's reduction in force plan was not excluded, on employee's **motion in limine** following summary judgment ruling, as law of the case in employee's action alleging that his termination for misconduct interfered with his ERISA rights; employer alleged that, during discovery, it uncovered evidence to prove that

| | |
|---|---|
| 106 | Courts |
| 106II | Establishment, Organization, and Procedure |
| 106II(G) | Rules of Decision |
| 106k99 | Previous Decisions in Same Case as Law of the Case |
| 106k99(5) | Trial or evidence, rulings relating to |

employee would never have
become eligible under the
plan, even if he had not been
discharged for misconduct.
Employee Retirement Income
Security Act of 1974, § 510,
29 U.S.C.A. § 1140.

## Attorneys and Law Firms

**\*916** Kathryn Ellen Korn, Chicago, IL, for plaintiff.

Paul Ely Starkman, Arnstein & Lehr, Chicago, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

KEYS, United States Magistrate Judge.

Before the Court are both parties' **motions** *in limine.* For the following reasons, this Court grants Defendant's **motion** *in limine* to bar Plaintiff's expert witness from testifying; grants Defendant's **motion** *in limine* to bar Plaintiff from presenting **undisclosed** witnesses at trial; grants in part and denies in part Defendant's **motion** *in limine* to bar evidence and argument relating to the Plaintiff's claims for "lost opportunity" damages; and denies Defendant's **motion** *in limine* to bar Plaintiff from presenting lay opinions of whether or not Plaintiff was properly terminated for misconduct under Sears' policies. Also, for the reasons set forth below, the Court denies Plaintiff's **motion** *in limine* to exclude **testimony** of Evelyn Freeman and other evidence.

### *BACKGROUND*

This is an action for alleged wrongful termination in violation of § 510 (" § 510") of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 (West 2000).[1] Plaintiff, Steven K. Anglin, brought this action against Sears, Roebuck and Company ("Sears") and Margaret Edidin, a Department Manager at Sears. Sears employed Plaintiff from February 1, 1977 until March 20, 1992, when he was terminated by his supervisor, Ms. Edidin.

According to Mr. Anglin, when Ms. Edidin informed him of his termination, she cited four specific reasons: his display of a "nude picture" on the computer monitor on his desk; his use of the women's washroom on one occasion; his use of obscene language toward another employee; and his having yelled at his immediate supervisor.[2] Mr. Anglin maintains that Sears characterized these alleged actions as "wilful misconduct" in order to justify his termination, so Sears would not have to pay him benefits pursuant to a "reduction in force" benefits program entitled *1992 Closed Unit/Reorganization Package* (the "Plan"). Therefore, according to Mr. Anglin, he was terminated with the specific intent to interfere with his ERISA rights, in violation of § 510.[3]

### *DISCUSSION*

1   2   3   "In general, federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." *Farley v. Miller Fluid Power Corp.,* No. 94 C 2273, 1997 WL 757863, at \*1 (N.D.Ill. Nov.24, 1997) **\*917** (citing *Luce v. United States,* 469 U.S. 38, 41 fn. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)). A **motion** in **limine** may be used to insulate the jury from potentially harmful or unfairly prejudicial evidence. MCCORMICK ON EVIDENCE, § 52 at 202–203 (4th ed.1992). However, a court is limited to excluding, in limine, only such evidence that is clearly inadmissible on all possible grounds. *Farley,* 1997 WL 757863, at \*1. As a result, "when admissibility determinations are not clear, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice can be resolved in their proper context." *Marlow v. Winston & Strawn,* No. 90 C 5715, 1994 WL 424124, at \*1 (N.D.Ill. Aug.11, 1994).

### A. Defendant's Motion *in Limine* to Bar Plaintiff's Expert Witness from Testifying at Trial.

4   This Court grants this **motion** *in limine.* On February 2, 2001, this Court denied Plaintiff's Motion for Leave to Complete Damages Expert Discovery, because Plaintiff had failed to produce his expert during discovery, despite the Court's prior extensions of time to complete discovery, as well as Defendants' many requests for Plaintiff's expert's files and deposition. Indeed, as explained in Defendant's Opposition to Plaintiff's Motion to

Leave to Complete Expert Discovery, since 1995, Sears had requested, on at least seven separate occasions (six times by letter and at least once by telephone), that Plaintiff produce his expert witness, Sandor Goldstein, for deposition. Although Plaintiff produced Mr. Goldstein's expert report (apparently six days before the Court-ordered discovery cut-off date of January 31, 2000), Plaintiff failed to produce him for deposition, despite the Court having granted a six-week extension of time to complete expert discovery. Nonetheless, Plaintiff has listed Mr. Goldstein on his witness list in the Final Pretrial Order, and, therefore, apparently intends to present him at trial.[4]

Courts in the Seventh Circuit routinely bar witnesses from testifying at trial, where the witnesses have not been produced in accordance with a court's discovery deadlines, thereby impeding opposing party's opportunity to adequately prepare for trial. See, e.g., Hill v. Porter Memorial Hosp., 90 F.3d 220, 224 (7th Cir.1996) (affirming district court's barring of plaintiff's expert witnesses, stating that "[a]dherence to established deadlines is essential if all parties are to have a fair opportunity to present their positions. In the absence of a compelling excuse, a district court is well within its discretion to exclude untimely proffered evidence or **testimony**."); In re Maurice, 21 F.3d 767, 773 (7th Cir.1994) ("When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction."); Coclanes v. City of Chicago, No. 93 C 557, 1994 WL 10007, at *3 (N.D.Ill. Jan.13, 1994) (barring plaintiff's expert witness from testifying, finding that defendant had **\*918** been denied opportunity to adequately prepare).

Based on the aforementioned authority, and Plaintiff's failure to produce his expert witness to be deposed in accordance with the Court's deadlines (and extensions), Plaintiff's expert witness is barred from testifying at trial.[5]

### B. Defendant's Motion In Limine to Bar Plaintiff from Presenting Undisclosed Witnesses at Trial.

5    This **motion in limine** is also granted for similar reasons. Plaintiff listed four witnesses in his Final Pretrial Order—Randy L. Duncan, Lee R. Emetti, Robert Kator, and Laura Michels—who had never been previously disclosed by Plaintiff, despite **repeated** requests by Defendant. On or about June 8, 1995, Sears served Plaintiff with interrogatories, which specifically requested, inter alia, the name, address and telephone number of each person with knowledge of the facts referring to any allegations contained in Plaintiff's Complaint. After not receiving answers to its interrogatories, Sears repeatedly asked Plaintiff to respond to discovery. Plaintiff, however, continually insisted that he had already served his interrogatory answers on Sears. Apparently, it was not until the parties' face-to-face pretrial conference, on March 5, 2001—two months after the close of discovery (and almost six years after Sears' interrogatories were first served on Plaintiff)—that Plaintiff's counsel revealed that Plaintiff had never answered the interrogatories.[6] Nonetheless, Plaintiff has listed these four witnesses in the Final Pretrial Order.

Clearly, Sears will be prejudiced if these witnesses are allowed to testify, as Sears has not had adequate time to properly prepare a defense. For instance, Sears was not able to depose these witnesses, as Sears did not know about these witnesses until the Final Pretrial Order, which was well after the close of discovery. The same rationale, discussed supra, about barring Plaintiff's expert witness, Sandor Goldstein, from testifying is equally applicable here, where Plaintiff has failed to comply with court-ordered discovery deadlines. See, e.g., Santiago v. Furniture Chauffeurs, Piano Movers, Packers, and Handlers Local 705, No. 99 C 2886, 2001 WL 11058, at *7 (N.D.Ill. Jan.4, 2001) (barring witnesses from testifying because they were not disclosed until after the discovery cut-off date); Scranton Gillette Communications, Inc. v. Dannhausen, No. 96 8353, 1998 WL 566868, at *3 (N.D.Ill. Aug. 26, 1998) (excluding nine witnesses because plaintiff had not shown diligence during discovery in producing them, and had not shown that allowing them to testify would not be unfair to defendants). Accordingly, witnesses Randy L. Duncan, Lee R. Emetti, Robert Kator, and Laura Michols are barred from testifying.

### C. Defendant's Motion In Limine to Bar Evidence and Argument Relating to Plaintiff's Claims for "Lost Opportunity" Damages.

The Court grants in part and denies in part this motion in limine. Sears asserts **\*919** that, under § 510 of ERISA, a plaintiff may not recover extra-contractual legal damages.[7] While this is an accurate statement of the law (see Harsch v. Eisenberg, 956 F.2d 651, 656–57 (7th Cir.1992) (finding that "appropriate equitable relief" available under ERISA does not include extra-contractual or punitive damages)), the critical question is whether

Plaintiff is requesting extra-contractual damages—which are clearly barred under § 510 —or "appropriate equitable relief." [8]

The Seventh Circuit—as well as other circuits [9]—has recognized that restitution may be a monetary equitable remedy available under ERISA. *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir.1994); *see also Cabin v. Plastofilm Industries, Inc.*, No. 96 C 2564, 1996 WL 496604, at * 2 (N.D.Ill. Aug.29, 1996) (finding that back pay can be considered a form of restitution and an equitable remedy under ERISA); *Boesl v. Suburban Trust & Sav. Bank*, 642 F.Supp. 1503, 1515 (N.D.Ill.1986) (finding that remedies for ERISA violations may include "awarding the employee back pay, reinstatement, restitution of his forfeited employee benefits, and any other relief necessary to make him whole") (citation omitted). Therefore, the pivotal question is whether Plaintiff is requesting monetary equitable remedies or extra-contractual remedies.

6    According to Sears, Plaintiff is requesting damages for the lost earnings and benefits he would have accumulated during *\*920* a "second career" at Sears, if he had not been discharged, been selected for termination pursuant to the 1992 reduction in force ("RIF") (and given $50,000 in severance benefits pursuant to the Plan), been rehired by Sears after the RIF, and then remained employed with Sears for nine more years. To the extent Plaintiff is seeking damages for *both* (1) severance benefits under the Plan and (2) lost earnings (and ensuing benefits) for nine-plus years of a supposed second-career at Sears, Defendant's **motion** *in limine* is granted. As pointed out by Sears, the Plan did not require that Sears rehire employees that it had previously terminated and to whom it had paid severance benefits. While the Plan may have allowed Sears to rehire employees terminated pursuant to the RIF, it certainly was not a requirement (and would not make sense if it was). Therefore, if Plaintiff's theory is that, but for his termination in violation of § 510 of ERISA, he would have been terminated pursuant to the RIF, and then subsequently rehired by Sears, Plaintiff may not request damages for his supposed second career with Sears, as such damages are speculative, and, moreover, cannot be legitimately characterized as restitutionary or contractual. Again, the contract (or Plan) did not stipulate that employees selected for termination pursuant to the RIF would be immediately rehired by Sears. *See Massie v. Indiana Gas Co.*, 752 F.Supp. 261, 269 (S.D.Ind.1990) ("The protected class for purposes of **an** ERISA § 510 claim has been defined ... as 'those employees who have an opportunity to *attain rights in a covered benefit plan.*' ") (citation omitted) (emphasis added). Here, being rehired after the RIF was not a right covered in the benefit plan.

However, it is not entirely clear what Plaintiff's theory truly is. According to Plaintiff's Remedy Itemization in the Final Pretrial Order (Tab G), Plaintiff seeks restitution in the form of back pay, lost pension value, compensation for early liquidation of profit sharing, lost vacation and loss of his merchandise discount (as well as reinstatement). Arguably, as the aforementioned authority holds, these are monetary equitable remedies that may be recovered under ERISA, as these remedies are relief necessary to make Plaintiff whole.

Plaintiff then states in his Remedy Itemization: "If the Court *instead* awards the value of the RIF benefit package for which plaintiff could have become eligible in 1992, with interest, that value is $29,008, plus interest from 1992 to the date of payment." (Emphasis added.) In other words, it appears from the Remedy Itemization that Plaintiff may be arguing alternative theories: Either he would have been terminated pursuant to the RIF and received severance benefits, OR he would not have been selected for termination pursuant to the RIF and would still be an employee with Sears. Therefore, to the extent Plaintiff is arguing separate, alternative theories, he is not barred from presenting evidence of back pay and reinstatement with full compensation for his loss in benefits. Plaintiff is merely barred from arguing that he should be compensated for *both* theories (i.e. that he would have received severance benefits under the RIF Plan AND been rehired by Sears). Accordingly, this *motion in limine* is granted in part and denied in part. [10]

**\*921 D. Defendant's Motion *In Limine* to Bar Plaintiff from Presenting Lay Opinions of Whether or Not Plaintiff Was Properly Terminated for Misconduct Under Sears' Policies.**

The Court denies this *motion in limine*. Sears argues that neither Plaintiff nor witness Constantine Doukas are competent to opine on Sears' termination policies, and that, whether Sears followed its policies when terminating Plaintiff, is irrelevant. Sears correctly maintains that the Seventh Circuit has repeatedly held that a violation of an employer's policies is not *per se* evidence of discrimination. *See, e.g., Dale v. Chicago Tribune Co.,*

797 F.2d 458, 464 (7th Cir.1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.").

Nevertheless, a trier of fact could conclude that a company's violation of its policies evidences a pretext for discrimination—in other words, that the decision-maker is not being honest about his or her reason for termination of the plaintiff. As explained in *Stalter v. Wal–Mart Stores, Inc.,* 195 F.3d 285, 289 (7th Cir.1999) (citation and internal quotes omitted):

> [A] plaintiff may [establish pretext] with evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge. These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation.

*See also Zakaras v. United Airlines,* 121 F.Supp.2d 1196, 1219 (N.D.Ill.2000) (finding that, while an employer's overly harsh disciplinary treatment of an employee is not evidence of unlawful discrimination, a trier of fact could conclude that an excessive punishment is evidence of pretext); *Stalter, supra,* 195 F.3d at 290 (finding that "grossly excessive" punishment for alleged infraction "cast[s] doubt on [employer's] true motive."). [11]

Consequently, in the case *sub judice,* a trier of fact might disbelieve that the adverse employment action was merely a mistake, and conclude that the real reason was motivated by discriminatory animus. Therefore, the Court cannot conclude that, under no circumstances, should evidence of a violation of Sears' policies be allowed. It is relevant to the issue of pretext. [12]

7   Given that this evidence is germane to the pretext analysis, it seems reasonable that Plaintiff be allowed to offer his lay *922 opinion describing how Sears violated its policies. Decisions as to whether lay opinion **testimony** is admissible is committed to the discretion of the trial court. *Gorby v. Schneider Tank Lines, Inc.,* 741 F.2d 1015, 1021 (7th Cir.1984). A trier of fact could then determine—in conjunction with the other evidence before it—the weight to give to Plaintiff's **testimony** (i.e. whether or not Sears truly violated its policies), and, moreover, whether a violation of Sears' policies even constitutes evidence of pretext and discriminatory animus, or merely bad business judgment, which is not actionable under federal discrimination laws. [13]

Under Federal Rule of Evidence ("FRE") 701, opinion **testimony** is limited to "those opinions or inferences which are (a) based on the clear perception of the witnesses and (b) helpful to a clear understanding of the witness' **testimony** of the determination of a fact in issue." As an employee who had worked at Sears for 15 years (from 1977 to his termination in 1992), Plaintiff is qualified to give his lay opinion about whether Sears was violating its policies when it terminated him. Of course, Sears may present evidence to contradict or impeach Plaintiff's lay opinion. [14] Furthermore, as discussed *supra,* assuming Sears violated its policies, the issue of pretext is a "fact in issue" in this case. Accordingly, under FRE 701, Plaintiff should be allowed to offer his lay opinion.

Similarly, Mr. Doukas' **testimony** will not be barred by pretrial motion. As with Plaintiff's **testimony,** the arguments Sears makes for the exclusion of Mr. Doukas' **testimony** go to the weight—and not admissibility—of the evidence. For example, Mr. Doukas' apparent admission, in his deposition, that he has never terminated anyone, in the last five to six years, for wilful misconduct goes to the weight of the evidence. Accordingly, this **motion** *in limine* is denied.

### E. Plaintiff's Motion *In Limine* to Exclude Testimony of Evelyn Freeman and Other Evidence.

8   The Court denies Plaintiff's **motion** *in limine.* Plaintiff makes eleven different *923 requests for exclusion of various pieces of evidence in his **motion** *in limine.* Plaintiff first argues that the **testimony** of Evelyn Freeman, an expert witness for Sears, should be barred because (1) she was first identified on March 9, 2001 (one business day before the due date of the Final Pretrial Order); (2) the substance of her opinion(s) has not been disclosed, nor a report been filed, pursuant to Federal Rule of Civil Procedure 26; (3) insofar as any opinion relates to Sears' liability, discovery was ordered closed several years ago; and (4) insofar as any opinion relates to Plaintiff's remedy or potential damages, Sears represented to the Court that the disclosure in January 2001 of a

detailed opinion by Plaintiff's potential expert witness (Sandor Goldstein) came too late to permit a defense expert to respond. [15]

However, Plaintiff fails to explain that the reason his counsel has not deposed Sears' expert witness—or been able to otherwise adequately prepare a defense to her **testimony**—is entirely due to Plaintiff's counsel's own failure to meet deadlines. Indeed, despite Plaintiff's assertion that Ms. Freeman was first identified on March 9, 2001, Sears actually disclosed Ms. Freeman, and the subject of her **testimony**, on August 28, 2000 in Defendant's Responses to Plaintiff's First Set of Interrogatories Pertaining to Plaintiff's Remedy. In its Responses, Sears specifically disclosed that one of the subjects of Ms. Freeman's **testimony** would be Plaintiff's damages. According to Sears, because Plaintiff had disclosed that an expert witness would testify in support of his damage claim, it was assumed that Plaintiff would first produce his expert witness for deposition, and then Sears' expert would be deposed. Furthermore, Sears maintains that the only reason its expert was not deposed was because Plaintiff never produced his expert (Sandor Goldstein) for deposition.

Additionally, Sears claims that Plaintiff made no real attempt to depose Ms. Freeman, other than a reference in a letter dated January 25, 2001 (6 days before discovery closed) about taking Ms. Freeman's deposition after the close of discovery, once Plaintiff's expert, Mr. Goldstein, had been deposed. But, as explained *supra*, Sears repeatedly sought the deposition of Mr. Goldstein, to no avail. In fact, this Court specifically denied Plaintiff's request for an extension of time, to produce Mr. Goldstein for deposition, due to Plaintiff's counsel's delays. Consequently, discovery closed without Plaintiff having presented Mr. Goldstein for deposition, or having taken the deposition of Sears' expert, Ms. Freeman.

The Court agrees with Sears that it would be unfair to bar Sears' witness from testifying at trial, due to Plaintiff's own lack of diligence in producing his expert, or in pursuing the deposition of Ms. Freeman. Sears was willing and able to produce Ms. Freeman for deposition and to take the deposition of Mr. Goldstein, and should not be precluded from presenting Ms. Freeman's **testimony** merely because Plaintiff failed to produce his own expert pursuant to the Court's discovery deadlines. Accordingly, this **motion** *in limine* is denied.

9   Second, Plaintiff requests that the Court exclude evidence as to Plaintiff's conduct or job performance at Sears which was not considered by Sears' three decision-makers *324 (Robert Ferkenhoff, Margaret Edinin and Audrey Walker) at the time of termination. Specifically, Plaintiff requests that the Court exclude **testimony** of Marianne Dutkiewicz, Ms. Edinin's secretary, and Mr. Ramesh Rao, a Sears manager in an Information Systems department. Plaintiff argues that any evidence not considered by the three decision-makers is irrelevant to Sears' existence of a legitimate non-discriminatory reason for terminating Plaintiff.

In response, Sears asserts that this evidence is relevant, as Ms. Dutkiewicz witnessed certain events leading up to Plaintiff's termination, and to the extent she did not communicate any specific event to a decision-maker, her **testimony** corroborates Sears' legitimate non-discriminatory reasons for terminating Plaintiff. For instance, Ms. Dutkiewicz allegedly observed naked pictures of women on Plaintiff's computer screen. Although she, apparently, did not report this incident until after Plaintiff's termination, it would corroborate one of Sears' alleged legitimate reasons for terminating Plaintiff, namely that he was showing female co-workers offensive pictures. Moreover, Sears explains that Ms. Dutkiewicz did, in fact, inform Ms. Edinin of Plaintiff's inappropriate conduct towards women, and that Ms. Edinin even overheard Plaintiff yelling at Ms. Dutkiewicz.

The **testimony** of Mr. Rao similarly should not be excluded by pretrial motion. As with Ms. Dutkiewicz's **testimony**, Mr. Rao's **testimony** corroborates Sears' alleged legitimate reasons for its adverse employment action, as Plaintiff, allegedly, had conflicts with people in Mr. Rao's department, illustrating Plaintiff's alleged unprofessional behavior. In sum, the Court finds the **testimony** of Ms. Dutkiewicz and Mr. Rao to be relevant to Plaintiff's credibility [16] and to Sears' alleged legitimate non-discrimination reasons for terminating Plaintiff. Accordingly, this **motion** *in limine* is denied. [17]

10   Third, Plaintiff seeks to exclude evidence of his pre–1991 performance reviews, maintaining that no evidence exists that these reviews were actually considered by Sears managers who terminated him. However, Sears counters that one of its reasons for terminating Plaintiff was his recurring problems with interpersonal skills, and that the pre–

1991 performance evaluations document these problems. Furthermore, Sears attests that Ms. Edinin—Plaintiff's supervisor—testified in her deposition that she did, in fact, review Plaintiff's performance evaluations prior to his termination, and that her failure to discuss those reviews with Plaintiff during the meeting, in which she terminated him, does not mean that she did not consider them. Because these performance evaluations may be relevant and corroborate Sears' reasons for terminating Plaintiff, *925 they will not be excluded by pretrial motion.

11  Fourth, Plaintiff requests that the Court exclude a performance review prepared by Dev–Tech Consultants, his subsequent employer after Sears. While such evidence is clearly irrelevant as to why Sears terminated Plaintiff (i.e. it is evidence *after* Plaintiff's termination), Plaintiff included in his Final Pretrial Order, Proposed Finding of Fact # 104, that he *continues to* have valuable technical skills and that he functions professionally in corporate environments.[18] Since, according to Sears, this performance review contradicts Plaintiff's proposed finding of fact, it should not be excluded by pretrial motion. In essence, Plaintiff has made this performance review relevant by his Proposed Finding of Fact in the Final Pretrial Order.

12  Fifth, Plaintiff requests that the Court bar any evidence from Sears to contradict Plaintiff's **testimony** as to the contents of a videotaped presentation made to him, and other Sears Information Systems employees, in January 1992, as Sears never produced the tape during discovery. However, in order to grant Plaintiff's request to exclude this evidence, there would need to be proof that Sears willfully destroyed this evidence, or otherwise acted in bad faith. *See Lapinee Trade, Inc. v. Boon Rawd Brewery Co., Ltd.,* No. 88 C 589, 1993 WL 394772, * 12 (N.D.Ill. Oct.4, 1993) (finding that there needs to be factual findings that a party destroyed evidence in bad faith, before an adverse inference will be drawn). However, Plaintiff provides no evidence that Sears intentionally, or in bad faith, destroyed evidence. Accordingly, this **motion** *in limine* is denied.

Sixth, Plaintiff requests that the Court exclude all evidence pertaining to events occurring at a management training class which Plaintiff attended (such as observations by other Sears employees), as Plaintiff did not receive the attendance records documenting who was at the meeting. As with Plaintiff's prior argument, however, he would have to show that Sears intentionally, or in bad faith, destroyed these records, which he has not done. Accordingly, this evidence will not be barred by pretrial motion.

Seventh, Plaintiff requests that the Court exclude the **testimony** from three female co-workers (Patti Mongello, Denise Molawe and Maureen Rose) who allegedly complained about Plaintiff's behavior, as Sears never explained how it located these names. Plaintiff appears to be arguing that he had no advance knowledge of these witnesses, and would, therefore, be prejudiced if their **testimony** were admitted into evidence. However, these individuals were disclosed to Plaintiff in Defendant's Supplemental Answers to Interrogatories, dated June 7, 1995, and Sears apparently even deposed Ms. Mongello on July 7, 1995. Furthermore, during discovery, Plaintiff could have asked—but apparently did not—how these individuals were located by Sears, and why their names were not on certain documents. Because the **testimony** of these female co-workers is clearly relevant, and because Plaintiff has shown no prejudice, this **motion** *in limine* is denied.

13  Eighth, Plaintiff requests that the Court exclude evidence as to any investigation of Plaintiff's conduct *prior* to March 19, 1992, maintaining that Sears should be bound by its interrogatory answer that the *926 decision-makers met on March 19, 1992 for a different reason than Plaintiff's termination, and that the idea to terminate Plaintiff unexpectedly arose at this meeting. However, as Sears maintains, the final "decision" to terminate Plaintiff is not synonymous with a prior "investigation" of Plaintiff's conduct. In fact, Sears argues that Ms. Edinin and Ms. Walker—two of the decision-makers—talked approximately ten days before Plaintiff's termination about his inappropriate behavior. While they may not have spoken about his termination *per se* until the March 19th meeting, these is no reason to exclude evidence of their prior investigation. Accordingly, this **motion** *in limine* is denied.

Ninth, Plaintiff argues that evidence offered to controvert facts which Sears is deemed to have already admitted by its failure to deny statements in Plaintiff's Rule 56.1(b) Statement[19] should be excluded. Specifically, Plaintiff argues that Sears merely requested that certain paragraphs (e.g., 82, 83, 86, 87, 96, 99, 102, 112, 113, 117, 121, 147, and 148) be stricken, but did not deny them as required by the Local Rules. However, in Sears' Response to Plaintiff's Statement of Additional Facts, Sears, for all

practical purposes, denied these paragraphs by arguing that Plaintiff violated the Local Rules by stating opinions and not facts, or by not including references to affidavits or parts of the record. Sears then moved to strike Plaintiff's statements at issue here, because they were in violation of the Local Rules, and, therefore, did not constitute valid statements of facts. Furthermore, Plaintiff never filed objections to Sears' Responses to Plaintiff's Statement of Additional Facts, and, arguably, has waived a right to contest them now. In any event, the Court finds that Sears did not "admit" facts in Plaintiff's Rule 56.1 Statement. Therefore, this **motion** *in limine* is denied.

Tenth, Plaintiff's **motion** *in limine* to bar evidence in support of Sears' defense of "exhaustion of administrative remedies" is moot, as Sears waived this defense in the Final Pretrial Order (Tab H).

14   Finally, Plaintiff argues that any evidence offered to controvert a finding that Plaintiff was a "participant" in the 1992 RIF Plan should be excluded, as it is "the law of the case." However, Judge Nordberg's August 10, 1998 Order (adopting this Court's R & R) specifically stated that "the law of the case" doctrine creates a rebuttable presumption. *See Anglin v. Sears, Roebuck and Co.,* No. 93 C 3438, 1998 WL 483524, at * 3 (N.D.Ill. Aug.10, 1998) ("The law of the case doctrine 'establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit.' ") (citation omitted).

In the case at bar, Sears maintains that, during discovery, it uncovered evidence to prove that Plaintiff would never have become eligible under the Plan, even if he had not been discharged for wilful misconduct. According to Sears, Mr. Doukas—Plaintiff's own witness —testified at his deposition that Plaintiff was considered *and rejected* for position elimination under the Plan. Because the "law of the case" only creates a presumption, the Court finds no compelling reason to exclude evidence which merely undermines **a** rebuttable presumption. Therefore, this **motion** *in limine* is denied.

### CONCLUSION

For the reasons set forth above, Defendant's **Motions** *in Limine* are denied in part and granted in part. Plaintiff's **Motions** *in Limine* are denied in full. Nonetheless, the denial of a **motion** *in limine* does not mean that all evidence contemplated by the motion will be admitted at *\*927* trial. *Hawthorne Partners v. A.T. & T. Techs., Inc.,* 831 F.Supp. 1398, 1401 (N.D.Ill.1993). Instead, denial merely means that, without the context of trial, the Court cannot determine whether the evidence in question should be excluded. *Id.* Thus, the Court will entertain objections on individual proffers as they arise at trial, despite the fact that the proffer falls within the scope of a denied **motion** *in limine.*

IT IS THEREFORE ORDERED that Defendant's **Motions** *in Limine* be, and the same hereby are, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff's **Motions** *in Limine* be, and the same hereby are, DENIED.

### All Citations

139 F.Supp.2d 914, 26 Employee Benefits Cas. 1091

### Footnotes

| | |
|---|---|
| 1 | Plaintiff had also alleged defamation per quod, but this claim was dismissed in Defendant's summary judgment motion. *See Anglin v. Sears, Roebuck and Co.,* No. 93 C 3438, 1998 WL 483524 (N.D.Ill. Aug.10, 1998). |
| 2 | Mr. Anglin denies having used obscene language toward another employee and yelling at his supervisor. He also contends that Sears had encouraged him to explore the hardware and software capabilities of his computer, which resulted in his display of the "nude picture", and that he used the woman's washroom on a Saturday, in an emergency after determining that it was unoccupied. Furthermore, Mr. Anglin alleges that Sears had **a** longstanding policy of corrective review for unacceptable conduct or attitude of employees, prior to terminating their employment and that, contrary to that policy, Sears did not provide Plaintiff an opportunity to improve the conduct which it cited as grounds for his termination. |
| 3 | More background details may be found in this Court's Report and |

Anglin v. Sears, Roebuck and Co. - WestlawNext
2:12-cv-02249-CSB-EIL    # 77    Page 17 of 26
Page 12 of 14

Recommendation ("R & R"), regarding Defendant's Motion for Summary
Judgment, to Judge Nordberg on March 26, 1997.

4        Plaintiff has also failed to follow Judge Nordberg's Final Pretrial Order
         Requirements. Pursuant to Section (e), Plaintiff was required to set forth the
         qualifications of each expert he intended to call at trial, which Plaintiff has
         not done. Morever, pursuant to the Order, all experts must be deposed
         prior to the preparation of the Order, unless otherwise directed by the
         Court. Importantly, this Court—because of Plaintiff's failure to meet
         deadlines—explicitly denied Plaintiff another extension of time to complete
         expert discovery, and, consequently, Plaintiff's expert witness has not been
         deposed. Accordingly, Plaintiff's expert witness shall not testify.

5        Because the Court is barring Plaintiff's expert witness from testifying, due to
         the witness not being produced for deposition, the Court does not need to
         address Defendant's alternative argument, that the expert should be barred
         because his **testimony** is based solely on speculation.

6        Plaintiff chose not to provide the Court with a Response to Sears' **Motions**
         **in Limine.** Therefore, the Court takes as true the factual allegations made
         by Sears that Plaintiff never responded to Sears' interrogatories, and that
         Sears was first informed of these witnesses in the Final Pretrial Order.

7        Section 510 of ERISA provides, in relevant part, that "[i]t shall be unlawful
         for any person to discharge, fine, suspend, expel, discipline, or discriminate
         against a participant or beneficiary ... for the purpose of interfering with the
         attainment of any right to which such participant may become entitled under
         the plan ...." 29 U.S.C. § 1140. As an ERISA § 510 claim, a plaintiff's
         remedies are limited to those under ERISA § 502(a)(3), which provides for
         "appropriate equitable relief." *See Teumer v. General Motors Corp.,* 34
         F.3d 542, 544 (7th Cir.1994) ("Made enforceable by participants and
         beneficiaries through § 502(a)(3), § 510 protects employment relationships
         from disruptions defined to frustrate the vesting of benefits plans rights or
         the continued enjoyment of rights already vested but yet to be partaken.")

8        Sears incorrectly cites the Supreme Court case, *Massachusetts Mut. Life*
         *Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), for
         the proposition that an ERISA § 510 plaintiff's remedies are limited to those
         under § 502(a)(3), which allows only "appropriate equitable relief", and not
         extra-contractual legal damages. While this is an accurate statement of the
         law, this is not what *Russell* held. *Russell* concerned Section 409(a) of
         ERISA (29 U.S.C. § 1109(a)), dealing with a delay in processing a
         beneficiary's disability benefits, that could be enforced under § 502(a)(2),
         providing for "appropriate relief." *Russell* explicitly stated that its opinion did
         not concern § 502(a)(3)—but only § 502(a)(2). *Id.* at 150, 105 S.Ct. 3085
         ("This does not resolve, of course, whether and to what extent extra
         contractual damages are available under § 502(a)(3). This question was
         not addressed by the courts below and was not briefed by the parties and
         *amici.*"). Nonetheless, after *Russell,* most circuits (including the Seventh),
         have found the reasoning in *Russell* to be equally applicable to § 502(a)(3).
         In fact, in *Harsh,* the Seventh Circuit stated: "The Supreme Court has never
         addressed the availability of extra contractual damages under section
         502(a)(3). In fact, the Court specifically reserved that question in *Russell.*
         Nevertheless, most circuits have found much of the *Russell* Court's
         reasoning in holding that extra contractual damages are not available under
         ERISA section 409(a) equally applicable to section 502(a)(3)." *Harsch,* 956
         F.2d at 657.

9        *See Schwartz v. Gregori,* 45 F.3d 1017, 1022–23 (6th Cir.1995) (finding
         back pay and front pay awarded against employer for retaliatory discharge,
         in violation of § 510, to be equitable remedies under ERISA); *Resner v. Arc*
         *Mills, Inc.,* No. 95 C 2924, 1996 WL 554571, at * 1 (S.D.N.Y. Sept.30, 1996)
         ("Monetary awards may be equitable if they are restitutionary, 'incidental to
         or intertwined with injunctive relief.' ") (citation omitted).

10       Sears argues that **testimony** relating to damages, other than the benefits
         under the Plan, would distract the trier of fact and unduly prejudice
         Defendant. The Court disagrees, and points out that this will be a bench—

Anglin v. Sears, Roebuck and Co. - WestlawNext
2:12-cv-02249-CSB-EIL   # 77   Page 18 of 26
Page 13 of 14

not jury—trial.

11    Sears argues that the Third Circuit's decision in *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407 (3rd. Cir.1991)—which held that an employer's failure to follow its standard performance evaluation procedures may support an inference that the proffered reason for the adverse employment action was pretextual—has been implicitly rejected by the Seventh Circuit. The Court disagrees. *Colgan*—as well as courts in the Seventh Circuit—have not suggested that an employer's deviation from its policies is a *per se* rule of liability. Rather, evidence of a deviation could be evidence of a pretext. Accordingly, such evidence is clearly relevant to the pretext analysis and will not be excluded.

12    In fact, Sears made this same argument (i.e. no evidence of pretext or discriminatory animus) in its Motion for Summary Judgment, that was denied by this Court in its R & R to Judge Nordberg. In the R & R (that was adopted), this Court found that there were material facts in issue as to whether Sears' cited reasons for termination were pretextual, given that Sears may have violated its own policies. (*See* R & R, dated March 26, 1997, at 13.) Here, Sears, essentially, reasserts the same argument in its **motion** *in limine* that has been previously rejected by this Court.

13    Sears cites no persuasive legal authority on point for its proposition that Plaintiff, and his former supervisor, should be barred from testifying at trial regarding whether Sears violated its policies when it terminated Plaintiff. For instance, in *Williams v. Williams Electronics, Inc.,* 856 F.2d 920 (7th Cir.1988)—a case Sears cites for this proposition—the court granted summary judgment to the employer, finding that the plaintiff's own self-serving assertions—as well as those of an immediate supervisor—concerning the plaintiff's abilities, did not raise an issue of material fact, because only the opinions of supervisors were relevant. However, in the case *sub judice,* this Court has already denied Sears' summary judgment motion, finding there to be material facts in dispute. Furthermore, Plaintiff plans to offer his opinion regarding Sears' policies—not merely a self-serving statement about his work abilities. Additionally, in *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984)—another case Sears cites—the court allowed into evidence, at trial, opinions of non-decision-makers, but merely held that the evidence of discrimination was too insubstantial to support the jury's verdict. In the case at bar, Sears is free to pursue a similar post-trial motion, but the lay opinions of Plaintiff and his former supervisor should not be excluded prematurely in a pretrial motion.

14    For instance, Sears' arguments that Plaintiff, admitted in his deposition, that he had never once looked at Sears' personnel policies regarding termination for willful misconduct, and that he had never once been in a position to judge whether conduct constituted wilful misconduct, are arguments that go to the weight of Plaintiff's **testimony**—not admissibility. In other words, Sears can use this evidence to impeach Plaintiff's credibility. Nonetheless, Plaintiff should be allowed to offer his lay opinion. (Furthermore, any hearsay objections about what Plaintiff heard from co-workers may be made at trial.)

15    Alternatively, Plaintiff argues that Sears' inclusion of Ms. Freeman **as a** witness, without disclosure of a report or substance of her opinion, opens the door to permit limited additional discovery of opinions of disclosed witnesses on remedy issues, and requests that the Court modify its earlier ruling accordingly. For the reasons discussed *infra,* the Court will not modify its earlier ruling. Plaintiff or Plaintiff's counsel—not Sears—is at fault for failing to comply with court-ordered discovery deadlines (and extensions).

16    Plaintiff, apparently, disputes that he behaved inappropriately towards women in the workplace, or behaved unprofessionally towards employees in Mr. Rao's department. Consequently, Ms. Dutkiewicz and Mr. Rao's **testimony** is relevant to Plaintiff's credibility.

17    As Sears points out, the cases Plaintiff relies on to argue that evidence not considered by Sears' decision-makers should be automatically excluded,

are easily distinguishable, and otherwise not on point. In both *McKennon v. Nashville Banner Publ'g Co.,,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) and *Cullen v. Olin Corp.,* 195 F.3d 317 (7th Cir.1999), the courts were concerned with misconduct and performance evaluations, respectively, that occurred *after* the plaintiff had been terminated. Here, however, the evidence that Plaintiff wants to exclude concerns incidents that occurred *before* Plaintiff's termination, and, therefore, as discussed *supra,* are relevant to corroborate Sears' alleged legitimate, non-discriminatory reasons for terminating Plaintiff and to attempt to undermine Plaintiff's credibility.

18      Specifically, Proposed Finding of Fact # 104 states: "Anglin continues to have valuable technical skills and has demonstrated, before and after his termination with Sears, that he functions successfully in professional corporate environments." *See* Tab J in Final Pretrial Order.

19      Local Rule 56.1(b) was formerly Local Rule 12(N).

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters     Privacy Statement     Accessibility     Supplier Terms     Contact Us     1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext



**U.S. v. Jackson**
United States District Court, N.D. Illinois.    May 31, 1995    Not Reported in F.Supp.    1995 WL 337067    (Approx. 3 pages)

1995 WL 337067
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois.

UNITED STATES of America, Plaintiff,

v.

Damone P. JACKSON, Mark R. Jackson, and Kerry Stephans,
Defendants.

No. 95 CR 155.    May 31, 1995.

**MEMORANDUM OPINION AND ORDER**

CONLON, District Judge.

*1 Damone Jackson, Mark Jackson, and Kerry Stephans are charged with operating a fraudulent telemarketing scheme in violation of 18 U.S.C. § 1343. Mark Jackson moves *in limine* to exclude the admission of certain entries from his personal journal and to admit evidence supporting a purported "**advice of counsel**" defense. Kerry Stephans moves *in limine* to preclude the government from informing the jury of his two prior convictions should he choose to testify. The United States ("the government") opposes defendants' motions.

**DISCUSSION**

**I. Motions In Limine**
The court excludes evidence on a **motion in limine** only if the evidence clearly is inadmissible for any purpose. *See Hawthorne Partners v. AT&T Technologies,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). **Motions in limine** are disfavored; admissibility questions generally should be ruled upon as they arise at trial. *Id.* Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice can be resolved in context. *Id.* at 1401. Denial of a **motion in limine** does not mean that all evidence contemplated by the motion will be admitted at trial. Rather, denial of the motion means that the court cannot determine whether the evidence in question should be excluded outside the trial context. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt,* 867 F. Supp. 686, 690-691 (N.D. Ill. 1994).

**II. Jackson's Motion To Exclude Personal Journal Notes**
Mark Jackson moves to bar the government from admitting entries from his personal journal as evidence at trial. The journal entries pertain to Jackson's personal relationships and financial goals.

Jackson argues that the journal entries are inadmissible hearsay. In support of this argument, Jackson contends that (1) the entries are not admissible as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) and (2) that the journal is not a business record within the meaning of Fed. R. Evid. 803(6). In response, the government notes that insofar as the entries pertain to Jackson's involvement with fraudulent telemarketing entities, they constitute admissions by Jackson and are admissible under Fed. R. Evid. 801(d)(2)(A). Rule 801(d)(2)(A) provides that a statement is not nearsay if offered against a party and if it constitutes "the party's own statement in either an individual or representative capacity." If the government can prove at trial that the entries are Jackson's own statements and are relevant to the case against Jackson, Jackson's written statements may be admissible without regard to Rules 801(d)(2)(E) or 803(6). Accordingly, Jackson's **motion in limine** to exclude the journal entries must be denied.

**III. Jackson's Motion To Admit Advice of Counsel Evidence**
Jackson also moves to admit evidence supporting an **advice of counsel** defense. To establish an **advice of counsel** defense, a defendant must establish that:

*2 (1) before taking action, (2) he in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing

**SELECTED TOPICS**

Criminal Law

Review
Exclusion of Portion of Deposition Testimony of Defendant Witness

**Secondary Sources**

**§ 20:17.In general**

3 Illinois Evidence Manual § 20:17 (4th ed.)

...See the April 2006 newsletter of the Illinois State Bar Association's Section on Civil Practice and Procedure (Volume 51, No. 7), "Trial Briefs," which contains an article written by Aurora attorney Pa...

**§ 75:3.Proceeding to determine admissibility of confession**

2 Trial Handbook for Illinois Lawyers - Criminal § 75:3 (8th ed.)

...When the question of the admissibility of a confession is raised, the court is required to follow established rules in holding the hearing to determine whether: (1) the defendant's right to Miranda war...

Appendix i. Illinois Rules of Evidence

27 Ill. Prac., Illinois Workers' Compensation Law Appendix i

...the witness acted from an improper influence or motive to testify falsely, if that influence or motive did not exist when the statement was made; or the witness's testimony was recently fabricated, if ...

See More Secondary Sources

**Briefs**

**Brief for the United States**

1942 WL 75683
Anderson v. U.S.
Supreme Court of the United States.
October 21, 1942

...The opinion of the circuit court of appeals (R. 868-884) is reported in 124 F. (2d) 58. The judgment of the circuit court of appeals was entered December 4, 1941 (R. 867). The petition for a writ of ce...

JOINT APPENDIX, VOL. I

2006 WL 236430
eBay Inc. v. MercExchange, L.L.C.
Supreme Court of the United States.
January 26, 2006

...FN* **Counsel** of Record Gregory N. Stillman (VSB #14308) K. Reed Mayo (VSB #26601) HUNTON & WILLIAMS SunTrust Center 500 East Main Street, Suite 1000 P.O. Box 3889 Norfolk, Virginia 23510 Telephone: (757...

JOINT APPENDIX, VOL. I

2012 WL 5901652
Boyer v. State of Louisiana
Supreme Court of the United States.
November 19, 2012

...Court met, His Honor Fred R. Godwin, Judge presiding; with Richard Gray, Deputy Sheriff; Paula Rosteet, Deputy Clerk of Court; Donald Guidry, Asst. District Attorney; and Patricia Hanks, Court Reporter...

See More Briefs

**Trial Court Documents**

**Northern Illinois Gas Co. v. The Ins. Co.**

2000 WL 35727181
Northern Illinois Gas Co. v. The Home Ins. Co.
Circuit Court of Illinois, Cook County

advice on the lawfulness of his possible future conduct; (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report.

*United States v. Cheek,* 3 F.3d 1057, 1061 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 1412 (1994); *Liss v. United States,* 915 F.2d 287, 291 (7th Cir. 1990). The **advice** of **counsel** defense may serve to demonstrate the absence of an intent to defraud. *See United States v. Walters,* 913 F.2d 388, 391 (7th Cir. 1990); *United States v. Martin-Trigona,* 684 F.2d 485, 492 (7th Cir. 1982).

The government does not dispute that Jackson is entitled to pursue any lawful defense he chooses. However, the government asserts that Jackson's motion should be dismissed because it fails to establish that the evidence contemplated by Jackson supports an **advice** of **counsel** defense. The government's argument is without merit. Insofar as the law allows the **advice** of **counsel** to serve as a defense to fraud charges, Jackson is entitled to present evidence in support of the defense. Accordingly, Jackson's **motion** *in limine* must be granted. [1]

### IV. *Stephans' Motion To Exclude Prior Convictions*

Stephans seeks to prevent the government from using two prior convictions for possession of a controlled substance should he testify at trial. Stephans notes that Fed. R. Evid. 609(a)(2) permits the government to introduce evidence of a crime involving "dishonesty or false statement" against any witness. Stephans asserts that because his prior convictions did not involve dishonesty, they are inadmissible at trial.

As the government correctly notes, prior convictions that do not involve dishonesty are admissible against an accused who chooses to testify under Fed. R. Evid. 609(a)(1). Under Rule 609(a)(1), a prior conviction may be admitted to attack the credibility of the accused's testimony if the crime was punishable by death or imprisonment in excess of one year and the probative value of the conviction outweighs its prejudicial effect. When weighing prejudice against probative value, the court must consider (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past and present crime; (4) the importance of the defendant's testimony; and (5) the centrality of credibility in the trial. *United States v. Causey,* 9 F.3d 1341, 1344 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 1412 (1994).

Stephans' prior convictions are not clearly inadmissible under Rule 609(a)(1). Assuming that the government can demonstrate that both convictions were punishable by imprisonment in excess of one year, the probative value of the prior convictions outweighs any minimal prejudicial effect. Although the prior convictions did not involve dishonesty, other factors favor admission of this evidence. The prior convictions occurred in 1992 and 1985, and therefore appear to fall within the ten-year time limit established by Fed. R. Evid. 902(b). The fact that Stephans is a convicted felon is probative of his credibility. The convictions involve crimes dissimilar to the present fraud charge; the dissimilarity of the crimes diminishes any prejudice arising out of the convictions and supports their admission. *Cf. Causey,* 9 F.3d at 1344 (similarity of past and present crimes militates against admission). Stephans asserts that his testimony may determine the result at trial. However, the importance of Stephans' testimony makes the issue of his credibility equally critical and supports the admission of potentially impeaching evidence. *See United States v. Nururdin,* 794 F. Supp. 277, 281 (N.D. Ill. 1992), *aff'd,* 8 F.3d 1187 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 1328 (1994).

*5 Stephans also argues that the prior convictions constitute propensity evidence inadmissible under Fed. R. Evid. 404 insofar as they suggest that Stephans is not a law-abiding person. However, defendants remain free to request a limiting instruction explaining the purpose for which the prior convictions are offered. Moreover, in order to further shield Stephans against any prejudice resulting from admission of the prior convictions, Stephans may request that the government be prohibited from describing the circumstances or nature of the prior convictions.

### CONCLUSION

Defendant Mark Jackson's **motion** *in limine* to exclude admission of personal journal notes is denied. Mark Jackson's **motion** *in limine* to admit evidence of **advice** of **counsel** defense is granted. Defendant Kerry Stephans' **motion** *in limine* to preclude the government from informing the jury of prior convictions is denied.

February 10, 2000

...Before this Court are the following **motions**: (1) Defendants Certain London Market Insurers' **Motion** for Summary Judgment on Trigger of Coverage For the 1955 Through 1976 Insurance Policies Issue; (2) De...

**St. Paul Fire and Marine Ins. Co of Zion**

2013 WL 3476145
St. Paul Fire and Marine Ins. Co v. City of Zion
Circuit Court of Illinois, Lake County
May 10, 2013

...This case comes before the court on multiple **motions**, including: 1) the **motion** of Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") for summary judgment against all Defendants; 2) the m...

**American Alliance Cas. Co. v. E**

2013 WL 2367142
American Alliance Cas. Co. v. Benito
Circuit Court of Illinois, Cook County
April 18, 2013

...THIS CAUSE COMING ON TO BE HEARD on plaintiff American Alliance Casualty Company's **Motion** for Summary Judgment on Count I of the Complaint for Declaratory Judgment, the court having considered the brie...

See More Trial Court Documents

All Citations

Not Reported in F.Supp., 1995 WL 337067

---

**Footnotes**

1          The court's ruling does not mean that Jackson is necessarily entitled to an
           **advice** of **counsel** jury instruction. A defendant is entitled to a jury
           instruction on his theory of the defense if the defense is supported by both
           the law and the evidence. *See United States v. Briscoe,* 896 F.2d 1476,
           1512 (7th Cir.), *cert. denied,* 498 U.S. 863 (1990); *United States v. Croft,*
           750 F.2d 1354, 1366 (7th Cir. 1984). It is impossible to determine prior to
           trial whether the evidence that Jackson will offer supports an **advice** of
           **counsel** defense.

---

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters    Privacy Statement    Accessibility    Supplier Terms    Contact Us    1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext



American Nat. Bank and Trust Co. of Chicago v. Allmerica Financial Life Ins. and Annuity Co.
United States District Court, N.D. Illinois, Eastern Division.    July 14, 2005    Not Reported in F.Supp.2d    2005 WL 6249757    *(Approx. 4 pages)*

2005 WL 6249757
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO,
as Trustee f/b/o Emerald Investments Limited Partnership, and Emerald
Investments Limited Partnership, an Illinois partnership, Plaintiffs,

v.

ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY
COMPANY, Defendant.

No. 02 C 5251.    July 14, 2005.

## Attorneys and Law Firms

Charles S. Bergen, Daniel M. Hinkle, George Robert Dougherty, Peter S. Roeser, Grippo
& Elden, Chicago, IL, for Plaintiffs.

Alan Scott Gilbert, Diana May Lin, Gerald E. Fradin, Kathryn Kristin Harstad, Wendy N.
Enerson, Sonnenschein, Nath & Rosenthal, LLP, David B. Singer, Fox, Hefter, Swibel,
Levin & Carroll, LLP, Shana Wintroub Peretz, McDermott, Will & Emery LLP, Chicago, IL,
David E. Lancz, United States District Court, Miami, FL, for Defendant.

### *MEMORANDUM OPINION*

JOHN F. GRADY, District Judge.

*\*1* Pending before the court is a motion by plaintiff Emerald Investments Limited
Partnership ("Emerald") to "compel answers to deposition questions regarding the "July
Restrictions." The motion arises out of a dispute between the parties as to whether
certain information sought by plaintiff is protected by the **attorney**-client privilege.

A brief review of the procedural history of the case will be helpful. The following is taken
from our Memorandum Opinion of December 11, 2003, granting partial summary
judgment to Emerald.

Plaintiff Emerald Investments Limited Partnership ("Emerald") is an entity that invests in
annuities. Emerald states that it has a proprietary trading strategy that requires a high
degree of flexibility in moving its money quickly and freely among investments.

On March 17, 1999, Emerald invested $2.5 million in each of two annuities (the
"Annuities"), for a total of $5 million, that were issued by defendant Allmerica Financial
Life Insurance and Annuity Company ("Allmerica").... The owner of the Annuities may
invest contributions in a variety of investment options in "sub-accounts" managed by
Kemper Gateway, primarily stock, bond, and money market mutual funds.

The parties entered into "Kemper Annuity Contracts" (the "Contracts") setting forth the
terms and conditions governing the Annuities.... Regarding transfers among accounts,
the Contracts provide, in relevant part:

Prior to the Annuity Date, the Owner may transfer amounts among accounts by
Written or Telephone Request to the Principal Office....

...

There is no charge for the first twelve transfers per contract year. A transfer charge
of up to $25 may be imposed on each additional transfer.

(Mem. Op. at 1-3).

In December 2001, having concluded that Emerald was engaged in a "market timing"
strategy, Allmerica adopted a set of "Transfer Rules" which severely limited the number

## SELECTED TOPICS

Privileged Communications and
Confidentiality

  Purpose of Attorney-Client Privilege

### Secondary Sources

§ 14:2.Attorney-client privilege,
generally

2 Illinois Evidence Manual § 14:2 (4th ed.)

...The purpose and scope of the attorney-
client privilege: The purpose of the attorney-
client privilege is to encourage and promote
full and frank consultation between a client
and his legal advisor by re...

§ 22:14.The attorney-client privilege

9 Ill. Prac., Illinois Civil Trial Procedure § 22:14
(2d ed.)

...The attorney-client privilege typically is
invoked and litigated at the discovery stage
rather than at trial. All evidentiary privileges
which are available at trial can also be invoked
to prevent disc...

§ 34:5.The attorney-client privilege

4 Ill. Prac., Civil Procedure Before Trial § 34:5
(2d ed.)

...The attorney-client privilege is the
evidentiary privilege that is most frequently
invoked in civil discovery. Confidential
communications between the client and the
client's attorney are privileged. T...

See More Secondary Sources

### Briefs

Brief for the United States in
Opposition

2004 WL 182835
Richard and Mary ROES, Nos. 2, 7, 8, 12 and
21, Petitioners, v. UNITED STATES OF
AMERICA and BDO Seidman, LLP.
Supreme Court of the United States.
January 27, 2004

...The opinion of the court of appeals (Pet.
App. 1-17) is reported at 337 F.3d 802. A prior
order of the court of appeals that had
remanded the case for further proceedings is
unofficially reported at 91...

Brief for Respondent

1976 WL 181663
Jack M. WEATHERFORD, Individua., .... ..
his official capacity as an agent of the South
Carolina Law Enforcement Division; Pete
Strom, individually and in his official capacity
as Chief of the South Carolina State Law
Enforcement Division; and other unknown
agents and officials of the South Carolina
State Law Enforcement Division, Petitioners,
v. Brett Allen BURSEY, Respondent.
Supreme Court of the United States.
October 20, 1976

...l.  Whether respondent was denied
effective assistance of counsel and a fair
state court trial where a paid informer posing
as a co-defendant infiltrated the defense
camp, affirmatively misled responden...

Appellant Westfield's Opening I

2012 WL 8264360
CENTER PARTNERS, LTD., Urban- .. .....
Tower Associates, Miami Associates, L.P.
and Old Orchard Limited Partnership, all
Illinois limited partnerships, individually and
derivatively on behalf of Urban Shopping
Centers, L.P., Plaintiffs/Appellees, v.
GROWTH HEAD GP, LLC, Westfield America
Limited Partnership, Westfield America, Inc.,
Westfield America Trust, Rouce-Urban, LLC,
Trcgp, inc., the Rouse Company, L.P., the
Rouse Company, Rouse LLC, GGP

of transfers that Emerald could make to and from the international sub-accounts of its annuity contracts. Emerald then filed this suit, alleging breach of contract by Allmerica in that the annuity contracts contained no provision authorizing such limitations. We granted summary judgment to Emerald on this liability issue.

Thereafter, at the court's request, Emerald filed a memorandum outlining its theory of damages. The memorandum disclosed that Emerald would be seeking very substantial damages on the basis that, but for Allmerica's breach, Emerald would have been able to earn profits from its trading strategy into the almost indefinite future. An expert retained by Emerald estimated the damages at $150,000,000.

The next development was Allmerica's notice to Emerald that, as of July 30, 2004, the Scudder International Funds would no longer be available for investment by Emerald. As authority for this Restriction, Allmerica relied upon provisions of the annuity contracts different from those considered in our earlier summary judgment ruling. Because transfers into and out of the international funds are an integral part of Emerald's trading strategy, Allmerica argued that Emerald's damages should be cut off as of July 30, 2004.

*2 Emerald challenged the right of Allmerica to impose these "July Restrictions," arguing that the contractual provisions relied on by Allmerica conferred no such authority. We disagreed, however, and held that Emerald's damages would be cut off as of July 30, 2004, *unless* Emerald could prove that the July Restrictions were imposed in bad faith. We held, in other words, that the contractual provisions in question did give Allmerica discretion to eliminate trading in the international sub-accounts, but that the implied covenant of good faith and fair dealing required that the discretion be exercised in good faith.

Emerald then filed an amended complaint, including an allegation that the July Restrictions, which purported to be for the protection of Allmerica's other investors from the ill effects of market timing, were actually imposed for the purpose of limiting Emerald's damages. This latter purpose, in Emerald's view, would amount to bad faith. That, in turn, would invalidate the Restrictions and remove any limit on Emerald's damage period.

The deposition questions at issue have to do with the communications between Allmerica's executives and its in-house counsel leading up to the adoption of the July Restrictions. The Restrictions were actually drafted by in-house counsel.

Emerald wants to know what was said in communications between counsel and corporate officers concerning the reasons for the July Restrictions. It obviously hopes that the answers it seeks would disclose that limiting plaintiff's damages was the primary motivation.

Allmerica contends that the communications in question are protected by the **attorney**-client privilege. Emerald argues that the privilege has been waived by Allmerica's having placed its good faith at issue in the case. Allmerica denies that it has raised any issue as to its good faith.

It is true that as a general proposition a party will waive the **attorney** privilege when it places at issue its communications with its **attorney** in connection with any claim or defense it raises. Emerald contends that Allmerica has done exactly that by relying on the additional contractual provisions to impose the July Restrictions. Because the Restrictions could only be valid if Allmerica was exercising its contractual discretion in good faith, Allmerica is necessarily raising the issue of good faith by relying on the July Restrictions. Allmerica counters that it is Emerald which has raised the issue of good faith by alleging bad faith in the amended complaint, an allegation on which Emerald has the burden of proof.

We agree with Allmerica. By denying that it acted in bad faith it has done nothing to waive the **attorney**-client privilege concerning communications which might be relevant to the issue of bad faith. Illinois law applies to privilege questions in this diversity case, and we are satisfied that Illinois law would support Allmerica's position. The Illinois cases have not articulated the "at issue" rule as clearly as some of the federal cases, but we believe the Illinois Supreme Court, when presented with this specific question, would follow the reasoning of the Third Circuit in *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3rd Cir.1994), considered a leading case on the subject:

*3 There is authority for the proposition that a party can waive the **attorney** client privilege by asserting claims or defenses that put his or her **attorney's advice** in issue

Supreme Court of Illinois.
January 25, 2012

...FN1. References are to the supporting record defendants filed in the appellate court. On March 18, 2011, the appellate court granted defendants' motion for leave to file instanter a supporting record a...

See More Briefs

**Trial Court Documents**

**Beetschen v. Northeast Illinois Regional Commuter R.R. Corp.**

2008 WL 8477098
Beetschen v. Northeast Illinois Regional Commuter R.R. Corp.
Circuit Court of Illinois, Cook County
April 24, 2008

...This matter comes before the court on Plaintiff Barry P. Beetschen's motion to compel documents from defendant Northeast Illinois Regional Commuter Railroad Corporation, d/b/a Metra/Metropolitan Rail p...

**Sixty Thirty Condominium Ass' Sixty Thirty**

2008 WL 5724475
Sixty Thirty Condominium Ass'n v. Sixty Thirty
Circuit Court of Illinois, Cook County
July 24, 2008

...This matter comes before the court on Defendants' motion to preclude the use and compel the return of documents inadvertently produced during pretrial discovery proceedings. For the reasons articulated...

**Wright v. Sixty Thirty Condomir Ass'n**

2010 WL 4689525
Wright v. Sixty Thirty Condominium Ass'n
Circuit Court of Illinois, Cook County
June 01, 2010

...Plaintiff James Wright has filed a Combined Motion to Compel Defendant and for Petition for Rule to Show Cause Against Third-Party Lieberman Management Services, Inc. to Produce Documents Wrongfully Wi...

See More Trial Court Documents

in the litigation. For example, a client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer. A defendant may also waive the privilege by asserting reliance on the **advice** of counsel as an affirmative defense. In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts as an essential element of its defense that it relied upon the **advice** of counsel, the party waives the privilege regarding communications pertaining to that **advice**.

In these cases, the client has made the decision and taken the affirmative step in the litigation to place the **advice** of the **attorney** in issue. Courts have found that by placing the **advice** in issue, the client has opened to examination facts relating to that **advice**. **Advice** is not in issue merely because it is relevant, and does not necessarily become in issue merely because the **attorney's advice** might affect the client's state of mind in a relevant manner. The **advice** of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an **attorney** client communication.

*Id.* at 863 (citations omitted).

A similar ruling is found in the Seventh Circuit case of *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095 (7th Cir.1987). The plaintiffs alleged that the defendant insurance company had denied their fire insurance claim in bad faith. The company had offered to settle the claim, and one issue was whether the settlement offer was made in bad faith. The magistrate judge found that the company had waived its **attorney**-client privilege "by voluntarily injecting its good faith in the settlement negotiations as a material issue in the case." *Id.* at 1098. The Court of Appeals reversed, applying Indiana law. We believe the Illinois Supreme Court would agree with the following analysis:

To waive the **attorney**-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense. *See, e.g., United States v. Exxon,* 94 F.R.D. 246 (Dist.Ct.1981) (good faith reliance on government regulations); *United States v. Miorzwicki,* 500 F.Supp. 1331 (Dist.Ct.Md.1980) (reliance on **advice** of **attorney**); *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975) (**qualified immunity**). It is the nature of an affirmative defense to raise a "matter outside the scope of plaintiff's prima facie case." 2A J. MOORE, MOORES FEDERAL PRACTICE ¶ 8.19[1] (2d ed.1984); *Rice v. Grant County Bd. of Comm'rs et al.,* 472 N.E.2d 213 (Ind.App.1984).

Our examination of the record reveals that Valley Forge did nothing more than deny the plaintiffs' allegations that it had failed to pay after the suit was filed and had improperly "packaged" the punitive damages claim with the compensatory claim. Valley Forge did not assert that the offer to settle was made in good faith-it did not have to. Valley Forge sought to show only that post-filing offers had been made, and, to counter any negative inference that might be drawn from the offer to settle both claims together, Valley Forge sought to show that the idea to "package" the two claims had originated with the plaintiffs' **attorney**. Offering to show that a post-filing offer of settlement had been made does not inject a new legal or factual issue into the case. The settlement offer is merely a new form of evidence to counter an issue injected by the plaintiffs. Similarly, the testimony of Valley Forge's former **attorney,** regarding the origin of the decision to "package" the offer of settlement, does not inject a new legal issue, but is merely another method of proof. Therefore, neither the settlement negotiations nor the testimony of McInerey can provide a basis for finding waiver under the "voluntary injection" doctrine.

*Id.* The following Illinois cases are consistent with these statements from *Rhone-Poulenc* and *Lorenz: Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.,* 189 Ill.2d 579, 244 Ill.Dec. 941, 727 N.E.2d 240, 244-46 (Ill.2000); *Hayes v. Burlington N. & Santa Fe Ry.,* 323 Ill.App.3d 474, 256 Ill.Dec. 590, 752 N.E.2d 470, 475-76 (Ill.App.Ct.2001); *see also Dexia Credit Local v. Rogan,* No. 02 C 8288, 2004 WL 3119026, at *7-8 (N.D.Ill.Dec.21, 2004) (discussing Illinois law).

Emerald relies primarily on the Illinois Appellate Court decision in *Lama v. Preskill,* 353 Ill.App.3d 300, 288 Ill.Dec. 755, 818 N.E.2d 443 (Ill.App.Ct.2004), a medical malpractice case. Plaintiff alleged negligent surgery by the defendant physician. The suit was not filed until more than two years after the surgery, so there was a limitations issue. Plaintiff alleged in her complaint that she did not discover her injury until a point in time well within the limitations period. The trial court held that by making this allegation the plaintiff

waived any privilege as to communications with her **attorney** concerning when she knew she was injured. On appeal, the majority of the Panel agreed. There was a dissenting opinion by Justice Bowman, however, which we think is in line with what the Illinois Supreme Court would hold if it were presented with the question:

> The case at bar is not a situation where the plaintiff has taken the affirmative step of placing the **advice** of her former **attorney** at issue in order to assert a claim or defense. Rather, it is defendant who seeks to discover plaintiff's husband's communications with Carden [the **attorney**] in order to disprove plaintiff's claim. Because plaintiff, as privilege holder, is not attempting to prove her claim (or defense) by relying upon these privileged communications in order to prevail, she has not waived any **attorney**-client privilege with Carden.

*Id.* at 453.

Our conclusion is that Allmerica has not waived the **attorney**-client privilege in regard to any communications it had with its **attorneys** concerning the subject of the July Restrictions.

However, this does not dispose of Emerald's motion to compel. Emerald argues that some of the questions Allmerica's witnesses refused to answer were not protected by the privilege in any event, since they merely called for factual information as distinguished from **attorney**-client communications. Allmerica's position appears to be that when facts are communicated to the client by the **attorney**, then the fact of such communication (including the timing of it), and whether the client learned the fact, are protected by the privilege and cannot be inquired into. The parties have briefed this question to some extent, but we request that they give it additional attention now that we have resolved the basic question of waiver. The parties are requested to file cross-memoranda on the question of unprotected fact vs. privileged confidential communication by July 29, and cross-responses by August 19, 2005. [1]

When we have read the additional memoranda we will set a date for a status conference and perhaps oral argument on this remaining issue.

## All Citations

Not Reported in F.Supp.2d, 2005 WL 6249757

---

### Footnotes

[1]     One question we have is how to test Allmerica's claim that a fact was disclosed by the **attorney**. When the question specifically calls for what the **attorney** said, the applicability of the privilege is usually fairly clear. But here, we have only the objection of counsel to support the claim that a particular fact was conveyed to the client by the **attorney**. Is there anything analogous to a "privilege log" that could be of use in this kind of situation? How have the cases handled the problem?

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

